UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Miha McSHANE, a/k/a Joseph
Molae Miha, Defendant-Appellant.

No. 71-2941.

United States Court of Appeals,
Ninth Circuit.

June 14, 1972.

Rehearing Denied Aug. 9, 1972.

Jared H. Jossem (argued), of Moore, Torkildson & Schulze, Honolulu, Hawaii, for defendant-appellant.

Harold M. Fong, Asst. U. S. Atty. (argued), Robert F. Fukuda, U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before BROWNING, WRIGHT and CHOY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

McShane appeals his convictions on three firearms violations: possession of a weapon by a felon, 18 U.S.C. App. § 1202(a); possession of an unregistered firearm, 26 U.S.C. § 5861(d); and possession of a firearm bearing no serial number, 26 U.S.C. § 5861(i). The court sentenced him to a two-year term and two four-year terms, all to run concurrently. The conviction under 18 U.S.C. App. § 1202(a) must be reversed because the prosecution did not allege or prove a link between the weapon and interstate commerce as required by United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). We affirm the convictions on the other two counts.

In July 1971 Treasury agents obtained a warrant to search for firearms at a Honolulu apartment. The magistrate issued the warrant on the strength of information from a previously proven informer, who had personally observed several handguns and a sawed-off shotgun in McShane's possession. The agents joined forces with Honolulu po-

lice officers in an eight-man task force. They anticipated danger, since McShane had earlier been convicted for firing a weapon at a police officer and escaping from custody.

An agent opened the unlocked screen door of the residence, called out his purpose, and moved inside in one continuous motion, without waiting for a response from within. The agents showed McShane the warrant and explained the purpose of the search.

As they began their search of the apartment, McShane asked, "Where are you going? I'll get them for you." He walked into a bedroom and produced a flight bag from the shelf of a closet. In it were two handguns. A companion bag contained another pistol and a short-barreled shotgun. The agents arrested McShane and he confessed later in the day.

## THE WARRANT

McShane attacks both the issuance and the execution of the search warrant. The supporting affidavit did not allege any link between the weapons and interstate commerce. Hence, McShane argues, it failed to show probable cause to suspect a violation of 18 U.S.C. App. § 1202(a), as construed in United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

Upon learning that an ex-convict owned a sawed-off shotgun, a reasonable man would have strong grounds to suspect that the firearm was not registered with the Department of the Treasury. As the trial judge said, the Treasury does not make a practice of issuing private persons permits to manufacture short-barreled shotguns. One could also reasonably suspect that the weapon had previously traveled in interstate commerce to reach Hawaii. The affidavit gave probable cause to believe violations of both 26 U.S.C. § 5861(d) and 18 U.S.C. App. § 1202(a) had occurred.

It is conceded that the agents in serving the warrant did not comply with 18 U.S.C. § 3109, which requires an announcement of identity and purpose prior to entry. This court has read into the statute an exception which applies when, under the circumstances, the announcement would create palpable peril to the lives of the law enforcement officers. United States v. Smith, 456 F.2d 1236 (9th Cir. 1972); Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966). Here the agents knew that McShane, previously convicted for armed assault against a policeman, was armed with a sawed-off shotgun, an exceedingly dangerous weapon at short range. The entry was lawful under the circumstances.

## THE CONFESSION

McShane contends that the officers coerced his confession by playing upon his emotional attachment to his girl friend, Audrey Villareal. The apartment was hers and, after McShane was arrested, the officers took her to the station for questioning. McShane claims the officers held her hostage to force a confession from him.

The agents questioned Audrey briefly about the guns and she responded that she knew nothing about them. She and McShane asked to see each other and were allowed to meet out of the hearing of the officers. Both later testified that she had asked McShane whether he was going to allow her to be implicated. McShane then told one officer that he would confess if they would let Audrey go. The agent said that Audrey could leave at any time. The confession followed. McShane later repeated the confession to another agent, giving assurances that the story was true and was not given just to protect Audrey.

The trial judge found, after hearing all of the testimony, that the officers had never threatened to arrest Audrey or hinted at any deals with respect to her. So the question we address is whether impermissible coercion should be implied from the police action in taking her to the station and allowing Audrey and McShane to talk together in the station house.

McShane testified that he was concerned about Audrey's health and did not want her to spend any more time than necessary at the jail. The police did not know she had any health problems, so there is no evidence they sought to pressure him by exploiting his fears for her health.

We have discovered no federal court decision that suggests the practices followed in this case are coercive. A number of cases have rejected the contention that a confession is involuntary if it is motivated by a desire to shield a loved one or spare her the ordeal of questioning and confinement.

In Vogt v. United States, 156 F.2d 308 (5th Cir. 1946), officers told an accused man they were going to bring his wife to the jail for questioning. The court held that this threat was not sufficient to destroy the voluntary nature of the subsequent confession.

McShane urges us to follow the California Supreme Court decision in People v. Trout, 54 Cal.2d 576, 6 Cal.Rptr. 759, 354 P.2d 231 (1960). Uncontradicted evidence there revealed that the police had taken Mrs. Trout into custody together with her husband, although there were no grounds to hold her. The officers told them both repeatedly that she would be held until he confessed. The police allowed her to see him in jail on two occasions in the hours following the arrest. Each time she saw her husband, the wife tearfully relayed the police threats and promises. One detective asked Trout what manner of man he was to allow his wife to go to jail when all he had to do was confess. Another told Trout that his wife should be at home with their children at that time of the year, the holiday season. After the second meeting with his wife, Trout confessed. Police then allowed him to see a lawyer, who advised him that the police had no basis for charging his wife. Trout then refused to sign a written version of his oral confession. The California court held that the oral admission should not have been admitted in evidence.

The *Trout* decision may be distinguished on two grounds. First, the police here had grounds to believe that Audrey may have been implicated in possession of the firearms, since they were found in her apartment. At the very least, they had the right to question her as a material witness. In *Trout,* the opinion indicates that the police had no basis for holding the wife.

Second, and more important, the police made explicit threats and promises to the Trouts, while nothing of that sort occurred here.

A recent California Court of Appeals decision distinguishes *Trout* on both of these grounds. In People v. Jackson, 19 Cal.App.3d 101, 96 Cal.Rptr. 414 (1971), police arrested Jackson and his wife. After learning that his wife was a suspect, Jackson confessed, saying, "I'll just give you what information I can to get my wife out of this. You know, as soon as possible, because she's got a heart condition and I don't want to put her through any more than I already have." *Id.* at 416. The officers had made no promises or threats to either of the Jacksons, and they had valid grounds to detain Mrs. Jackson.

If the officers in the case before us had expressly threatened Audrey with arrest and prosecution, or had bargained with McShane to get his confession in exchange for her release, we would have serious doubts about the admissibility of the confession. Such tactics are objectionable on two grounds. In a free society the police should not extract confessions by such psychological pressure. And we can readily imagine that the psychological coercion generated by concern for a loved one could impair a suspect's capacity for self control, making his confession involuntary. The police conduct in this case was not reprehensible, and the record does not show that McShane felt great psychological stress. So we hold that, in the limited

circumstances of this case, the confession was voluntary and admissible.

The convictions under the National Firearms Act are affirmed. The conviction on the felon-in-possession count is reversed on the authority of United States v. Bass, *supra*.