**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Robert DIEZEL, William E. Fuller and Geraldo Ruiz, Defendants-Appellants.**

No. 79–5063.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1979.

Manuel W. James, Key West, Fla., Alvin E. Entin, North Miami Beach, Fla., for defendants-appellants.

A. Scott Miller, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by three defendants from a conviction for violation of 21 U.S.C. § 841(a)(1) and § 846—possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance, in this case, marijuana. They appeal, asserting several procedural violations. We affirm their convictions.

On May 18, 1978, Captain Fred Long of the United States Customs Service received information from a confidential source to the effect that an illegal offloading of marijuana would occur at the Marquesas Shrimp Company in Key West, Florida early the next morning. The property was then placed under surveillance. At about 3:30 a. m., a van and pick-up truck drove to the grounds and parked near the pier. At

around 4:15 a. m., a sea vessel approached the pier.

Large bales were unloaded from the boat onto the motor vehicles. As the motor vehicles left the company property, they were stopped by Customs officers. These officers noticed the odor of marijuana, discovered marijuana in the vehicle and arrested the two drivers who are defendants here, Michael Diezel and Geraldo Ruiz. At about that time, the commotion caused some of those who had been loading bales to run into a nearby warehouse where they too were arrested by Customs officers.

All of the defendants were read their *Miranda* rights in Spanish and English. One of the defendants, William Fuller, asked one of the officers to retrieve his shirt from the sea vessel, describing the location of the shirt. It was found where he said and a search of the vessel led to the discovery of more marijuana.

Before trial, Fuller moved to suppress his statement about the shirt. That motion was denied after Fuller's lawyer refused to proceed after arguing that the burden of proof lay on the prosecution.

All three defendants in this appeal moved to suppress the introduction of the physical evidence on the grounds that it was unconstitutionally obtained. The trial court denied that motion also.

At a joint jury trial of 13 defendants, all were convicted of both counts of the indictment. After the convictions, the court ruled on earlier defense motions for acquittal and granted them, except for the three defendants in this appeal.

The defendants here argue first that the Customs officials had no authority to search the vehicles or vessels because their jurisdiction is limited to situations where a border crossing has taken place. In the suppression hearing, Customs Officer Gregory V. Welch testified that he did not know if the ship had come from outside the country.[1]

█ It is true that Customs officers are not like state or local police who are general guardians of the public peace. *See United States v. Diamond,* 471 F.2d 771 (9th Cir. 1973), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2751, 37 L.Ed.2d 161 (1973). The powers of the Customs Service to arrest and search are defined by federal statute and are usually limited to violations of the Customs laws. See for example 19 U.S.C. 482[2] and 1581(a).[3]

---

1. By MR. ENTRIN:
   Q: Where did you see the SEAHORSE coming in from?
   A: It came in from a seawardly direction, from the bay area outside to the pier.
   Q: Do you know whether it had even been outside the bay?
   A: No, sir.
   Q: Did you have any information that it had ever been outside of the bay, yourself?
   A: No, sir.
   Q: Had the trucks ever been seen outside of the Continental United States?
   A: No, sir, not that I know of. (TR 40–41).

2. 19 U.S.C. 482 states:
   Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he

may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast or otherwise, he shall seize and secure the same for trial.

3. 19 U.S.C. 1581(a) states:
   Any officer of the customs may at anytime go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under sections 1701 and 1703–1711 of the title, or of any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, and inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and

However, in the area of drug enforcement, Congress has entrusted broader powers to the Customs Service. As part of the Narcotic Control Act of 1956, Congress gave Customs agents the power to:

> (2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs . . . or marihuana . . . where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation.

26 U.S.C. § 7607. This statute embodies the notion that Customs officials have specified arrest powers in matters dealing with narcotic drug or marijuana violations. Since the arrest and searches here clearly involved such drugs, the Customs officers had statutory jurisdiction to arrest and search. We therefore reject this portion of the defendants' arguments.

The defendants argue next that the trial judge's denial of the motion to suppress Fuller's statement because the lawyer refused to proceed was improper because the burden of proving the voluntariness of a confession rests with the prosecution. They also argue that the trial court was obligated under 18 U.S.C. § 3501[4] to hold a "voluntariness hearing."

We reject both of these arguments. First, while the pre-trial burden of proof concerning the voluntariness of a confession rests with the government, the burden is on the movant to make specific factual allegations of illegality. As this Court said in *United States v. Evans,* 572 F.2d 455, 486 (5th Cir. 1978), *cert. denied* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978), "The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed." *See also United States v. De La Fuente,* 548 F.2d 528, 533–34 (5th Cir. 1977), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1976); 434 U.S. 904 (1977); *United States v. Crocker,* 510 F.2d 1129, 1135 (10th Cir. 1975).

Second, under 18 U.S.C. 3501(d),[5] no "voluntariness hearing" is required for a statement which was not the result of interrogation or which was made when the suspect was not in custody. Here, where the defendant Fuller asked officers to get his shirt from on board the ship, his statement was clearly volunteered and not in response to interrogation. It therefore falls within the statutory exception to the requirement of a hearing.[6]

Finally, the defendants allege that it was reversible error for the prosecution to reveal the fact that all the defendants were read their *Miranda* rights but that a conversation was held only with Fuller. They argue that such a disclosure is a reference to the fact that no other defendant

---

> stop such vessel or vehicle, and use all necessary force to compel compliance.

In *United States v. Whitmire,* 595 F.2d 1303 (5th Cir. 1979), *cert. filed,* 48 USLW 3262 (Oct. 16, 1979), this Circuit rejected the notion that this statute always required known border crossing facts.

4. 18 U.S.C. § 3501 states in part:

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.

5. (d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person

to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

6. Section 3501(d) could be read as simply a reiteration of the standards for admissibility of confessions set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and other related cases. However, we read this section, as Judge Wilkey of the D.C. Circuit read it in *United States v. Bernett,* 161 U.S. App.D.C. 363, 391, 495 F.2d 943, 972 (D.C.Cir. 1974) in an en banc concurrence as an "exception to the procedural requirements of § 3501 . . . ." in the sorts of situations set out in this subsection, such as when a defendant has volunteered information without interrogation.

made any post-arrest statements and was therefore an impermissible prosecutorial comment on Diezel's and Ruiz's post-arrest silence.

We disagree. The standards set forth in *United States. v. Edwards,* 576 F.2d 1152, 1154 (5th Cir. 1978), provide a bifurcated test for determining whether or not prosecutorial statements are a reference to a defendant's silence. That case held that such statements were such a reference when: (1) the manifest intention of the prosecution was to draw attention to the defendant's post-arrest silence; or (2) the jury could infer "naturally and necessarily" that it was a comment on the defendant's silence.

Neither of those factors exists here. The reference to Diezel's and Ruiz's silence came only after the prosecution had asked a Customs agent, who had spoken with Fuller, whether he had a conversation with any of the defendants. The agent mistakenly answered "no," which forced the prosecutor to then ask specifically about the conversation with Fuller.[7] Under these circumstances, it was clear that it was not the intention of the prosecutor to draw attention to the other defendants' silence or that the jury would have inferred it as such.

Having disposed of these contentions, we AFFIRM the holding of the trial court.

7. Q: Did you have any conversation with *any* one of the defendants?
   A: No.
   [TR p. 97]
   The prosecutor's next question was:
   Q: Did you have a conversation with Mr. Fuller that evening?
   A: Yes.
   [TR p. 99]