STATE of Missouri, Respondent,

v.

Connie Eldwin POLLOCK, Appellant.

No. WD 30896.

Missouri Court of Appeals,
Western District.

June 9, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 8, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Russell Clyde Still, Columbia, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Lew A. Kollias, Asst. Attys. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The defendant was convicted of robbery in the first degree and sentenced to a term of imprisonment for twenty-five years. The appeal contends, among other grounds, that the confession in evidence was involuntary and otherwise inadmissible because the product of an unlawful arrest.

The contention that the confession was not admissible evidence was raised by formal motion and determined by a hearing in limine. The admission was taken from the defendant Pollock in an Iowa county jail where he and Joan Shinn, a companion, were held for a local burglary. The statement, given to Officers Muse and Garrison of the Columbia Police Department, acknowledges commission of armed robbery of the Regal 8 Motel in Columbia on May 7, 1978—the crime charged against the defendant by the information on trial. The principals all gave testimony on the motion, and the court ruled the confession admissible evidence. The exclusion of the statement from evidence rests on contentions that the admission was involuntary because taken by the police after the defendant once refused their inquiry and while the defendant was held by unlawful arrest.

■■■ These contentions stated as separate grounds are but aspects of the same question: was the inculpatory statement by the defendant an act of free will? The exclusion of a confession does not result merely because it follows an illegal arrest, but only when that smirch renders the admission involuntary. *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *State v. Fair*, 467 S.W.2d 938, 943 (Mo. banc 1971). Nor does such a confession qualify as evidence because a *Miranda* warning intervened, but only when the admission is unaffected by the original illegality. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *State v. Johnson*, 530

S.W.2d 690, 693 (Mo. banc 1975). The act of a free will which renders voluntary a confession taken during an unlawful arrest custody, however, requires more than that the statement conforms with the Fifth Amendment value against self-incrimination, but also with the Fourth Amendment value against incursion upon the person by an unreasonable search or seizure. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 2252, 60 L.Ed.2d 824 (1979); *United States v. Perez-Esparza*, 609 F.2d 1284, 1289 (9th Cir. 1979). That is because the policy of the Fifth Amendment is to deter police misconduct by the exclusion of coerced confession, whereas the policy of the Fourth Amendment is not only to deter but to protect the integrity of the judicial process. Thus [*Dunaway v. New York*, supra, l. c. 99 S.Ct. 2259]

> although a confession after proper *Miranda* warnings may be found "voluntary" for purposes of the Fifth Amendment, this type of "voluntariness" is merely a "threshold requirement" for Fourth Amendment analysis . . . Beyond this threshold requirement *Brown* articulated a test designed to vindicate the "distinct policies and interests of the Fourth Amendment."

The test to which *Dunaway* adverts—declared in *Brown v. Illinois*, supra, l. c. 422 U.S. 603, 95 S.Ct. 2261—is that a confession taken under unlawful arrest is the product of a free will only when there is no causal connection between one event and the other. The relevant inquiry to determine whether the confession was an exploitation of the original illegality focuses on [*Brown v. Illinois*, supra, l. c. 603, 95 S.Ct. 2261]

> [t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct . . . . .

Thus, the usual inquiry as to age, education, infirmity and any other consideration of susceptibility to coercion which determines the voluntariness of a confession for

Fifth Amendment purposes, is augmented by evidence of the illegal arrest to determine for Fourth Amendment purposes whether the confession is "sufficiently an act of free will to purge [that] primary taint." *Wong Sun v. United States*, supra, 1. c. 471 U.S. 486, 83 S.Ct. 416; *Brown v. Illinois*, supra, 1. c. 422 U.S. 602, 95 S.Ct. 2261; *State v. Johnson*, supra, 1. c. 693.

The evidence on the Motion to Suppress shows that on October 16, 1978, two Missouri detectives, Officers Muse and Garrison from Columbia, obtained a confession from the defendant that he robbed the Regal 8 Motel in May of 1978. The confession was given in a county jail in Iowa where the defendant and his companion, Joan Shinn, were held by the local authority for burglary. The defendant was known to the Iowa authority under the alias Dennis Brannum rather than Connie Pollock. The officers were prompted to Iowa by information that an automobile which bore the license plate number of a vehicle involved in a Columbia, Missouri homicide was driven by the person in custody in Iowa. The officers informed the officers at the Iowa county jail that they had come to interview Pollock who, they believed, was held there as Brannum. [They surmised the true identity because Joan Shinn, his inseparable companion, was in the custody also, but under her true name.][1] They had come to inquire about a homicide. The officers were taken to an open detention area and identified the defendant to the Iowa sheriff as Connie Pol-

lock. At that [so Pollock testified], the defendant told the sheriff: "I didn't know them and didn't particularly care to see them." The officers nevertheless were given the opportunity to speak with them, so they had access, first to Shinn and then to Pollock, but neither had anything to say. Each was confronted separately, and conversation with the defendant was preceded by a *Miranda* warning and disclosure that the subject of interview was two recent robberies and a homicide in Columbia, Missouri. The defendant continued to refuse interview by insistence to the Iowa authority [according to his own testimony] "because I wasn't who they said I was." The two, Shinn and Pollock, were brought together and [according to defendant] the officers confronted him with the evidence of his guilt and brought up the possibility of a penitentiary sentence for Joan Shinn. The officers testified that the interviews ended within twenty minutes. The defendant testified interrogation persisted from shortly after 5 p. m. until midnight. It was the evidence of Joan Shinn that the interview lasted "[m]aybe an hour."[2]

On the next morning, October 16, 1978, at about 9 a. m., Officers Muse and Garrison returned to the Iowa county jail to attempt interview again of the defendant. As they approached the outer jail entrance, Pollock shouted to them that he would like to talk with them. [That was prompted, according to Pollock, by the blandishments of the officers the night before for his confession

---

1. The defendant Pollock was no stranger to the Columbia, Missouri police department. About two months earlier, in August of 1978, Officers Muse and Garrison had interviewed defendant Pollock in a St. Louis County jail concerning a Columbia, Missouri, burglary. On that occasion, after *Miranda* warnings and written waiver by defendant of those rights, he confessed to that crime. [The police testimony suggests that the defendant confessed to another robbery as well. That remains unclear, but does not bear on the question here.]

2. The spans of time the officers engaged in interrogation of Pollock or Shinn, both or either, on October 15, 1978, is not clear. Officer Muse testified on the motion that he and Offi-

cer Garrison after no more than twenty minutes, left the Iowa jail to find lodgings for the night. It is clear that on that occasion, Pollock and Shinn, for at least some time, were together during interrogation by the officers. On the Motion to Suppress hearing, when asked how long Officer Muse talked to her on that first encounter, she answered: "I don't know, maybe thirty minutes, an hour." At least some of that time was for discussion as to how she happened to be in jail. It was the testimony of Pollock that the officers talked alone to Shinn for 10 or 15 minutes, when she was returned to her cell, and then brought down once again to interrogate Pollock in her presence: Pollock did not say how long she remained, but only that the questions to him continued for hours.

in exchange for the release of Joan Shinn from charges. That night, he took up the proposal with "Joani about making false statements to cut her loose," and called to the officers that morning to confess on that condition.] The officers entered the detention area and were told by Pollock: "I have a couple of burglaries, couple of robberies." With that, the defendant confessed to three separate crimes, two burglaries and the robbery of the Regal 8 Motel. In advance of each confession, Officer Muse advised Pollock of his rights under *Miranda*, Pollock executed a written waiver of rights, and signed a confession written by Muse and witnessed by Garrison. The defendant Pollock and Joan Shinn returned to Columbia, Missouri with the officers that day.[3]

■ The Motion to Suppress pleads that the confession to the robbery was the product of arrest without warrant or probable cause and that the statement of inculpation was otherwise coerced because induced by a promise to release Joan Shinn, among other irregularity. The burden to show that a confession taken during unlawful custody is admissible rests on the prosecution. *Brown v. Illinois*, supra, l. c. 422 U.S. 604, 95 S.Ct. 2262. The burden is acquitted by a preponderance of the evidence. *State v. Olds*, 569 S.W.2d 745, 751[4] (Mo. banc 1978). The evidence by the prosecution, however, presupposes a state of facts upon which proof can proceed. *State v. Rutledge*, 524 S.W.2d 449, 455[2] (Mo.App.1975). The claim to infringement of the Fifth Amendment right against involuntary self-incrimination is amply stated by allegations of an induced confession and other official conduct of coercion. The claim to infringement of the

Fourth Amendment right against seizure except on warrant and probable cause, however, merely contends that the confession was "the direct result of defendant's warrantless arrest, and that said arrest was made without probable cause." We assume for purpose of decision, nevertheless, that the motion pleads a justiciable ground of taint.[4] [But see: *U. S. v. Diezel*, 608 F.2d 204, 207[3] (5th Cir. 1979); *U. S. v. Cella*, 568 F.2d 1266, 1284[19, 20] (9th Cir. 1977); *State v. Fields*, 535 S.W.2d 56, 57 (Mo.App. 1976); *State v. Nolan*, 423 S.W.2d 815, 818[5-9] (Mo.1968)].

■ The prohibition of the Fifth Amendment is against exaction of confession by any improper influence. *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). A promise of leniency which overbears the will and brings about confession induces an involuntary admission of guilt. *Hunter v. Swenson*, 372 F.Supp. 287, 300[6-9], aff'd 504 F.2d 1104 (8th Cir. 1974). The defendant contends that his attachment for Joan left him vulnerable to the promise of Officers Muse and Garrison to work her release for his confessions to crime. He related that he was interrogated in her presence with taunts such as: "I know you don't want to see Joani go to the penitentiary." The defendant contends that the interrogation continued for hours, and that after the officers left—after midnight—"[he] discussed the matter with Joani about making false statements to get her cut loose." The officers denied the conversation altogether—rather, they said they left after not more than twenty minutes because Pollock simply refused to acknowledge his true identity or any complicity in

---

**3.** There was intimation in the evidence on the Motion that Pollock waived extradition and was returned to Missouri by that authority. The evidence does not show the disposition of the Iowa charge against Pollock—the evidence suggests no charge was ever lodged by Iowa against Joan Shinn.

**4.** The defendant gave no evidence on the issue of arrest without warrant or probable cause. Pollock testified only that he and Joan were

arrested on the morning of October 15, 1978, while they shared a motel room in Bloomfield, Iowa. They were questioned about a garage burglary in Bloomfield, fingerprinted and jailed. Joan Shinn told as the reason for arrest: "[T]hey said Connie [Pollock] had did a burglary of some kind. They arrested me because I was with him, I suppose." The testimony of Officer Muse discloses that the Iowa authority lodged a charge against Pollock but none against Shinn.

the Columbia crimes. Joan testified that the officers remained not more than an hour in her presence and that much of that time was spent in discussion as to the cause of her then arrest. To questions from defense counsel as to a promise for leniency assertedly made in her presence, she had no clear recollection:

Q. Do you remember if he ever made a statement to you about admitting to a crime so that you would be released in Iowa?

A. I don't know.

Q. You don't remember that?

A. No.

Q. Is it possible he said that, though?

A. Possible, yeah.

The reported colloquy between Pollock and Joan, in any event is difficult to imagine. It could only have passed between them after interrogation ceased after midnight [according to the Pollock version] when the officers left, and by emitted shouts—since Pollock was held on the first floor, and Joan on the second. There may be occasion to determine that concern by a defendant to protect a kin or another in close affection from the rigor of prison may suffice to render a confession from such an inducement involuntary, the facts are not here. *United States v. McShane*, 462 F.2d 5, 7[3] (9th Cir. 1972); *United States v. Mullens*, 536 F.2d 997, 1000[2] (2d Cir. 1976). There was substantial basis for the trial court to reject this contention by a preponderance of the proof.

■ The motion contends another Fifth Amendment infirmity to voluntary confession: that, the age, education and condition of the defendant considered, the admission of crime after a prolonged interrogation was the act of a coerced will. Pollock, then twenty-one years of age, had his first prison experience in Arkansas at thirteen. His account was of an uninterrupted course of prison, escape and crime since. In prison, he took advantage of every educational opportunity and so, by his estimate, had achieved the equivalent of a two-year college instruction level. The defendant contends that his will was overborne by the unremitted interrogation of the police authority from the time of arrest on October 15, 1978, at 10 a. m., until that midnight, first by the Iowa police and then by the Missouri officers.

The evidence on the period of interrogation by the Iowa authority was given by Pollock. That testimony related that the two were questioned by the Iowa sheriff, together and separately, on and off, from the time of arrest until 4 p. m. There is no detail of mistreatment, want of humaneness or considerateness. He and Joan were then fed. The officers from Missouri arrived at 5 p. m. and, according to Pollock, took up their own interrogation until that midnight. There was no complaint of harshness, but only that the inducement to free Joan for his confession and the prolonged time of questions, rather than a free will, produced the admission of guilt. That proof was contradicted by Officer Muse who testified that the interview was for no more than twenty minutes, and was further compromised by the testimony of Joan that the encounter was for an hour, at most. The truth of the disparate testimony was for the trial court to determine, as was the effect—within the ambit of circumstances—of the duration of interrogation on the confession. *State v. Alewine*, 474 S.W.2d 848, 853[6, 7] (Mo.1972).

Another ground to suppress contends also that the police failed to administer to the defendant the *Miranda* advice of constitutional rights prior to interrogation and confession, and that the questions did not cease after he asserted a wish to remain silent.

The evidence given by both Pollock and Shinn acknowledges that each was advised under the *Miranda* procedure before every episode of interview or interrogation. Pollock does not contend otherwise. He admits the signatures on the separate *Miranda* waivers and confessions to the three crimes, but contends he did not read them. He explained his signatures were only perfunctory because the confession narratives

contained no truth but were given in bargain for freedom for Joan. This argument is merely perfunctory. The essential ground of contention is that his statements were not lawful evidence because obtained after he invoked the right to remain silent on the first encounter with the Missouri officers the night before.

We assume that the refusal to talk to the officers that first evening was genuine and not feigned.[5] The contention of "refusal" the defendant adopts, however, is as incongruous as his testimony on that issue. The defendant refused interview at the outset of that encounter because he contended he was not the person Connie Pollock and so had no knowledge of his conduct. Yet, as his testimony has it, that interview became an interrogation which lasted the night. The defendant does not complain that the continued questions despite refusal to talk rendered the confession involuntary, but that the presence of the officers *the next morning* violated the protection *Miranda* gives an unwilling suspect against police inquiry. Whatever the assertion, a declaration by the suspect that he knows nothing of the crime does not, of itself, amount to an invocation of the right to remain silent. *State v. Burley*, 523 S.W.2d 575, 578[4] (Mo.App.1975). The defendant made the officers fully aware that "he knew [the rights] very well, he knew them by heart." In such circumstance, particularly, denial of the crime may not be taken as implicit election of the right to remain silent. *United States v. Jones*, 486 F.2d 599, 600[1] (5th Cir. 1973). The evidence comports most consistently, rather, with the testimony of the Missouri officers that they ceased inquiry promptly after the insistence by Pollock to dissemble identity made plain to the officers that he simply did not wish to talk to them.

The conduct of the defendant the next morning, in any event, rendered that refusal irrelevant. He beckoned to the officers as they approached the jail. Then—hardly before there was to time to advise him once again by the *Miranda* procedure and for formal exercise of waiver—Pollock blurted out: "I have got a couple burglaries, couple robberies." The confessions were invited. The refusal to make a statement to the police custodians on one occasion does not *per se* invalidate a confession made on another occasion when done with understanding that the right to remain silent remained an absolute prerogative. *State v. Taylor*, 559 S.W.2d 35, 37 (Mo.App. 1977). The defendant made confession after a night of reflection. The law does not prohibit confession by a changed mind nor the police from inquiry whether an accused changed his mind. *State v. Dyke*, 19 Or. App. 705, 528 P.2d 1073, 1076 (1974). It requires only that confession be voluntary and with understanding of the rights accorded by *Miranda*. To be sure, the officers intended one last attempt for interview before return to Columbia. That undertaking was superfluous. The confession given that morning was not only voluntary, but volunteered. That was the effect implicitly given the evidence by the order of the trial court to deny suppression of confession.

There remains the contention that the confession be suppressed nevertheless as affected by the taint of an unlawful arrest infringement of the Fourth Amendment. The question becomes: granted the original illegality of arrest, was the confession an exploitation of that illegality or from a means unaffected by that taint? *Wong Sun v. United States*, supra, l. c., 371 U.S. 487, 83 S.Ct. 417; *Brown v. Illinois*, supra, l. c., 422 U.S. 601, 95 S.Ct. 2260; *Dunaway v. New York*, supra, l. c., 99 S.Ct. 2259. Thus,

5. The defendant, by his own account, refused interview by Officers Muse and Garrison that first night, October 15, 1978, to avoid revelation of his true identity as Connie Pollock. He was held under the name Dennis Brannum. When taken into custody by the Iowa authority he owned a driver's license in that name and operated an automobile in that ownership. It would have been a suspicious circumstance, to say the least, for the Iowa law officers to become aware that the person in custody had withheld his true name. Actually, the car Pollock operated—and owned by Brannum—had been identified at the scene of a murder in Columbia and was the subject the Missouri officers had come to investigate.

the inquiry goes beyond the Fifth Amendment concern of voluntary confession to the Fourth Amendment concern as to whether the response to the police questions was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Brown v. Illinois*, supra, l. c., 422 U.S. 602, 95 S.Ct. 2261. The focus rests on "the causal connection between the illegality and the confession." *Dunaway v. New York*, supra, l. c., 99 S.Ct. 2259. The facts of the case give that answer most cogently: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, supra, l. c., 422 U.S. 603–604, 95 S.Ct. 2261. The factors of temporal affinity between illegal custody and confession and the intervention of circumstances between those events bear on the confession as an act of free will—and thus vindicate the dual purposes of the Fourth Amendment to deter official misconduct and to protect the integrity of the judicial process. The factor of the purpose and flagrancy of the police action bears on the official exploitation of the illegality—and thus reinforces the Fourth Amendment concern to exclude tainted evidence from the fact finder. *United States v. Perez-Esparza*, supra, l. c. 1289; *United States v. Preston*, 608 F.2d 626, 633 (5th Cir. 1979).

Two distinctive circumstances color any assessment as to real causation between the unlawful arrest and the confession of the defendant Pollock. First: the official authority which made the arrest was not the official authority which gained the confession. Second: there was only allegation, but no evidence, of the unlawful arrest—so whether that police conduct was reckless or only careless, we do not know.[6]

■ There was no contention that Iowa had purpose to investigate any Missouri crime at the time of the Pollock arrest. The defendant was taken into custody for a local burglary. In fact, the Iowa authority was unaware that the person held as Brannum was the person sought as Pollock by the Missouri authority. Nor does the evidence give reason to suppose that the interrogation conducted by Iowa on October 15, 1978, the day of arrest, related to the interrogation by the Missouri officers later that day. In a word—no evidence allows inference that the confession inquiry by Missouri exploited the illegal arrest by Iowa. There is no contention of a conjoined *stratagem* to divide responsibility and so avoid constitutional censure. *People v. Gabbard*, 78 Ill.2d 88, 34 Ill.Dec. 751, 398 N.E.2d 574, 579 (1979). Nor were the arrest and confession accomplished by a common practice between two otherwise disparate police authorities so as to bind both to the consequences of the illegality of either. *United States v. Perez-Castro*, 606 F.2d 251, 253[3, 4] (9th Cir. 1979). Thus, there can be no inference of a seizure of the person concededly without probable cause, but with the hope that "something might turn up" by statement—which invalidated the confessions given in *Brown v. Illinois*, supra, and *Dunaway v. New York*, supra, l. c. 99 S.Ct. 2259. We do not say that a confession gained by a police authority unwitting of the illegality which brought the accused into detention may not nevertheless be affected by that taint and so rejected as evidence. That cannot be known, however, without evidence that the flagrancy of the original unlawful intrusion was "calculated to cause surprise, fright and confusion" [*Brown v. Illinois*, supra, l. c. 422 U.S. 605, 95 S.Ct. 2262] and result in confession.[7] *United States v. Perez-Esparza*, supra, l. c. 1290.

---

**6.** In default of a contrary proof by the State, we have assumed the pleaded contention of an unlawful arrest without warrant. [See footnote 7].

**7.** The *Motion to Suppress* alleges, among others, that the confession was the product of an

arrest without warrant and thus inadmissible. The defendant contends that the *pleading* places the burden upon the State to prove either that the arrest was lawful or that the confession was not the product of the arrest. Our procedure requires that we sustain that contention. In the absence of evidence by the

State that the arrest was lawful—that is, upon probable cause—we assume the illegality of the police caption and detention of the defendant. The question relates not to the absolute burden of proof on the admissibility of a confession the result of a Fourth Amendment infraction, [that rests on the State: *Brown v. Illinois*, supra, l. c. 422 U.S. 604, 95 S.Ct. 2262] but upon whom the law assigns the burden to come forward with some specific evidence of Fourth Amendment illegality. Our procedure casts both the ultimate risk of nonpersuasion and the burden to adduce evidence of a prima facie illegality upon the State in a case where confession follows a Fourth Amendment infraction. *State v. Olds*, supra, l. c. 751[4]. That procedure derives, because our decisions determine the validity of Fourth Amendment confessions by the same principles as for Fifth Amendment confessions: whether within "the totality of circumstances" the statement was voluntary and uncoerced. *State v. Flowers*, 592 S.W.2d 167, 168[1-3] (Mo. banc 1979); *State v. Fair*, supra, l. c. 943[2]; *State v. Johnson*, supra, l. c. 692 693.

The federal courts, on the other hand, separate the Fourth and Fifth Amendment complaints of illegal confession, and require a different inquiry on each. Those decisions rest analysis on the United States Supreme Court declarations in *Brown v. Illinois*, supra, and *Dunaway v. New York*, supra, l. c. 99 S.Ct. 2258:

> The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. It is directed at all unlawful searches and seizures, and not merely those that happen to produce incriminating material or testimony as fruits. In short, exclusion of a confession made without *Miranda* warnings might be regarded as necessary to effectuate the Fifth Amendment, but it would not be sufficient fully to protect the Fourth. *Miranda* warnings, and the exclusion of a confession made without them, do not alone sufficiently deter a Fourth Amendment violation. [*Brown v. Illinois*, supra, l. c. 422 U.S. 601, 95 S.Ct. 2260].

On that rationale, the confession taken under an unlawful police custody must not only meet the Fifth Amendment standard of voluntariness, but be "sufficiently an act of free will to purge the primary taint" of illegality. The Fifth Amendment voluntariness of the confession, therefore, is only "a threshold requirement" on the issue of the confession as an act of free will to be determined by the facts of the case with especial concern for the "temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, *particularly, the purpose and flagrancy of the official misconduct . . . .*" [emphasis add-

ed]; *Brown v. Illinois*, supra, l. c. 603–604, 95 S.Ct. 2261–2262.

In terms of a confession from an unlawful arrest, the quality of admissibility depends upon whether the causal link between the Fourth Amendment intrusion and the effect on the accused persisted at the time of confession. That causation is shown by the "temporal proximity of the arrest and confession, the presence of intervening circumstances, and, *particularly, the purpose and flagrancy of the official misconduct . . . .*" [emphasis added] *Brown v. Illinois*, supra, l. c. 603–604, 95 S.Ct. 2261. The predominant factor of proof is the flagrancy of the police conduct. All other considerations—the full circumstances and the affinity in time between the events, included—are only concomitants of the official misconduct. That knowledge is best known to the accused who, in real terms, alone can describe the complaint. That is because only the accused can relate to the trier of fact the effect of the rankness of the police misconduct—by intimidation, confusion, fright or other upset—on the decision to confess. In sum, the trier of fact cannot assess whether the lapse of time and the events have spent the effect of the illegal intrusion—so that the confession was the act of a free will—until the accused gives some evidence of the taint which the State must dispel.

The federal courts give effect to that logic by the requirement that a complainant who moves the exclusion of a confession for Fourth Amendment illegality "go[es] forward with some 'specific evidence demonstrating taint.' " *United States v. Perez-Esparza*, supra, l. c. 1290; *United States v. Diezel*, supra, l. c. 207[3]. That procedure acknowledges that any real possibility for the State to acquit the ultimate burden to prove the confession free from Fourth Amendment taint rests on some description by the accused of the original misconduct. Our procedure, which makes no distinction between an involuntary confession under the Fifth Amendment and a confession not the product of a free will under the Fourth Amendment formulates an improbable onus: that the State define its own flagrancy and then dispel the causal effect of that misconduct on the confession by still other evidence that time and events dissipated the taint of that illegality by the time of confession. The motion by Pollock to suppress the confession as a product of an arrest without warrant, absent some evidence of the illegality, would have been summarily denied under the articulated federal procedure.

The test of "the act of a free will" for Fourth Amendment purposes reduces to whether the evidence shows "the causal chain, between the illegal arrest and the statements made subsequent thereto, [was] broken." *Brown v. Illinois*, supra, l. c. 422 U.S. 602, 95 S.Ct. ——. The United States Supreme Court in the sequel

The evidence on the motion shows no purposefulness of arrest other than for the Iowa burglary. The confession, taken by officers unaware of arrest without warrant or probable cause, was not an exploitation of an antecedent illegality.[8] In circumstances, where the evidence shows a confession merely consequent upon unlawful arrest, but without demonstration of taint, the purpose to exclude the evidence becomes less cogent than when the flagrancy appears. *United States v. Cella*, supra, l. c. 1285[21]; *United States v. Preston*, supra, l. c. 633; *United States v. Kurzer*, supra, l. c. 516. That is because it is when the police purposely arrest in hope to yield a confession that the deterrent rationale of the Fourth Amendment to exclude illegal evidence applies most forcefully.

The record shows—consistently with the order of the trial court to deny the suppression of the evidence—that the confession was a self-motivated act of free will, removed in time from the arrest and unaffected by that illegality. The evidence allows inference that Pollock had no other purpose to serve by an insistence upon an identity, already disclosed as false, and so made overture to confess. The events between arrest and confession, and the lapse of that day and more, rendered the incrimination "sufficiently an act of free will to purge the primary taint." *United States v. Miller*, 608 F.2d 1089, 1103[15] (5th Cir. 1979); *United States v. Preston*, supra, l. c. 634. The order to deny suppression of the confession is sustained.

The defendant contends also that the court admitted a photograph as evidence in violation of the rules of criminal discovery. The month before, the defendant requested disclosure by the State [under then Rule 25.32] of evidence the prosecution intended to present at the trial. The prosecution made the discovery, but not until three days before the trial, of a photograph of the defendant taken during an unrelated police detention. That evidence was a basis by the victim to identify the defendant as the robber of the Regal 8 Motel.

The defendant impugned the admissibility of the photograph[s] by pretrial Motion

---

opinion, *Dunaway v. New York*, supra, l. c. 99 S.Ct. 2259·2260, dispelled·altogether the "lingering confusion between 'voluntariness' for purposes of the Fifth Amendment and the 'causal connection' test established in *Brown*" for Fourth Amendment admissibility of a confession. In effect, *the act of a free will* which results in a voluntary confession under the Fifth Amendment is not the same *act of a free will* which results in an admissible confession under the Fourth Amendment. As to an admission impugned as obtained in violation of the Fifth Amendment, the burden of proof is on the prosecution to show that the proposed evidence "is derived from a legitimate source wholly independent of the compelled testimony." *United States v. Kurzer*, 534 F.2d 511, 516 (2d Cir. 1976); *United States v. Cella*, supra, l. c. 1285[21]. As to an admission impugned as obtained in violation of the Fourth Amendment, the burden of proof is on the prosecution to show only that the proposed evidence was unaffected by the original taint. [These effects derive from the values each Amendment distinctively protects.] *United States v. Perez-Esparza*, supra, l. c. 1288–1290. That rests on the implicit postulate that the State has responsibility to explain its own official conduct conforms to constitutional standards. Thus, the ultimate burden of proof properly rests on the State to prove legality of action, whether under the Fifth or the Fourth Amendment.

In the case of a Fifth Amendment contention to exclude, the burden to go forward with the proof of legality is also properly assigned to the prosecution because the Fifth Amendment excludes *altogether* involuntary evidence—and the prosecution alone can know the source of the testimony it proposes to present. *United States v. Kurzer*, supra, l. c. 515–516; *United States v. Cella*, supra, l. c. 1285. In the case of the Fourth Amendment, however, the *evidence is excluded only if caused by the original taint* —a quality of the testimony best known to the accused.

8. The evidence, although not fully developed, shows that the Missouri officers made inquiry of the Iowa sheriff as to the cause of the Pollock and Shinn detentions and were informed of the Iowa burglary. That factor distinguishes these circumstances from *United States v. Perez-Castro*, supra, where the officers to whom the accused confessed made no inquiry of other officers who arrested the accused as to the cause of the detention.

to Suppress. The grounds to suppress were the untimely discovery disclosure—from request on January 3, 1979, to production on February 28, 1979—and that the procedure to identify the defendant by the photograph[s] was prejudicially suggestive. The court found the process of identification free of taint, and overruled the Motion to Suppress but "[without] prejudice [to] your right to raise by objection the admissibility of the admission of the photographs." Thus, the court by express decision [reiterated] deferred a rule on the admissibility of the evidence until offer and objection at the trial. The objection to the photograph at the trial, however, was that what the defendant looked like at that prior detention was "totally irrelevant and immaterial" to the present identification. The defendant abandoned contention of prejudicial noncompliance with our discovery procedure. The objection at the trial alone concerns our review. The defendant does not assert to us that the evidence was irrelevant and immaterial and so is bereft of contention on appeal altogether. *State v. Blockton*, 526 S.W.2d 915, 920[13–15] (Mo.App.1975).

The defendant asserts also that refusal of Instruction A was prejudicial. That submission tendered the crime of stealing over fifty dollars as a lesser-included offense of robbery. The defendant views robbery as a *compound larceny* to justify contention. The euphemism that robbery merely compounds a larceny with a forcible caption from the person derives from *State v. Gardner*, 356 Mo. 1015, 204 S.W.2d 716[1, 2] (1947). The analysis was employed to justify a prosecution for larceny although the evidence proved a robbery. That was on the theory that the State could waive the "force and fear of the robbery and prosecute for the cognate and lesser offense of larceny from the person." In fact, *Gardner* submitted *both* larceny and robbery, and the conviction for larceny alone was approved. That rationale, however, does not treat larceny as an included offense of robbery so as to entitle a defendant to such an instruction, but decides that

a defendant may not complain about an instruction which benefits him. *State v. Gardner*, supra, l. c. 717[3, 4]; *State v. Fields*, 293 S.W.2d 952, 953[1–6] (Mo.1956).

The evidence proved all the elements of robbery, the fear of the victim included. There was no evidence of a stealth unaccompanied by fear. Where the evidence shows an accomplished robbery only, there is no error to refuse tender by the defendant of a submission on stealing. *State v. Blewett*, 507 S.W.2d 56, 57[1] (Mo.App. 1974).

The judgment is affirmed.

All concur.