UNITED STATES of America,
Plaintiff-Appellee,

v.

Eluterio MORALES,
Defendant-Appellant.

No. 81–2278
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 14, 1982.

Edward A. Stapleton, III, Brownsville, Tex., for defendant-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., Harold Levy, Atty., Wm. Bradford Reynolds, Asst. Atty. Gen., Walter W. Barnett, Deputy Chief, Appellate Section, Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Eluterio Morales, a former police chief for the City of La Joya, Texas, appeals from his conviction for making a false material declaration before a grand jury in violation of 18 U.S.C. § 1623. He challenges the sufficiency of the evidence and the behavior of the prosecutor. Finding no error, we affirm.

The conviction at issue in this case stems from the arrest of Fernando Perales for driving while intoxicated. Morales was charged with one count of depriving a citizen of constitutional rights in violation of 18 U.S.C. § 242 and two counts of making false declarations before a grand jury. One of the two counts for lying to the grand jury was dismissed. Morales was convicted by a jury of both remaining counts. He was subsequently granted a new trial on the civil rights violation conviction and therefore appeals only his conviction for the one count of false declaration to the grand jury.

I.

Morales first contends that there is insufficient evidence to support his convic-

tion of false declaration before a grand jury for falsely denying that he had hit Perales at the time of the arrest.[1] Specifically, Morales asserts that the evidence does not establish that he made false statements knowingly, as required for violation of 18 U.S.C. § 1623. *See United States v. Caucci,* 635 F.2d 441, 444 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981). He argues that he admitted "arm twisting, hair pulling, falling and forceably keeping Perales on the ground," and that his statement that he did not hit Perales is ambiguous. We find no ambiguity in the following statement: "I can tell you this in front of anybody. I did not hit Fernando Perales at any point." Morales unequivocally stated before the grand jury

that he did not hit Perales and at other points indicated that he neither kicked nor pushed the prisoner. From this testimony, in direct contradiction to the testimony of three witnesses and the victim himself, the jury could determine that Morales had testified falsely and knowingly. As to any issue of ambiguity, we would agree with the District Judge's order denying Morales' motion for rehearing or new trial in which he stated:

> The Court was presented with ample opportunity to observe Mr. Morales' demeanor and behavior during the trial. The Court finds that based on these observations and from examination of the Grand Jury transcripts that Mr. Morales' command and understanding of the Eng-

1. Count Two of the indictment stated in part:

3. At the time and place aforesaid ELUTERIO MORALES while under oath did knowingly declare before the grand jury with respect to the aforesaid material matter as follows:

"Q. Okay. Up to this point, do you care to change anything that you've testified to before this Grand Jury, as to maybe something false you said earlier, or anything that may not be clearly understood?
A. I haven't said any false statements.
Q. So—
A. What I'm telling you is the truth, I swear by God.
Q. And you understand that this Grand Jury would consider important and material anything going to how the person was arrested, what force was used in arresting that person, whether or not he was handcuffed, whether or not he was resisting, or whether or not the officers—what stories or what statements they might make to the Grand Jury that those matters are important and material to this Grand Jury to get the truth out?
A. I understand. I understand that everything is important, but apparently Margarito Morin is lying.
Q. Okay. Do you know—
A. I can tell you this in front of anybody.
Q. Okay. Go ahead and repeat that, because it was off?
A. I can tell you this in front of anybody. I did not hit Fernando Perales at any point.
Q. Okay.
A. I did struggle a lot with him, and I even scratched my knees keeping him down because a two hundred and forty pound man, it's kind of hard for a hundred and forty-four pound man to handle.

Q. He's two—you're saying that Fernando Perales was two hundred and forty pounds?
A. Yes Sir, he's pretty heavy. He's about two hundred and forty pounds.
Q. But didn't we understand earlier that it was you, and Margarito Morin, Roberto Longoria, and Duane Snyder out there arresting one drunk?
A. No, Mr. Snyder was standing on the—opening the door to the patrol car, and he was really pushing everybody away.
Q. Who was?
A. Fernando Perales. And then when I was—I was attached to him, to his hand, and I was grabbing his hand, and so was Margarito Morin, because he had already pushed Longoria towards the patrol car, and he was grabbing me and Morin at the time when he fell. He fell and he also took me with him. And I don't know whether—I know that he fell to his back, but I don't know how far he went because I didn't see far, and then I went crawling all the way to where he was so that he won't get up, because I saw him trying to stand up.
Q. All the way to where Perales was?
A. Yes, he was, I would say about four feet away from where I landed.
Q. I thought that you said you fell on top of him?
A. I didn't fall on top of him, you know, I fell on the side."

4. The material declarations of the defendant, ELUTERIO MORALES, as set forth in Paragraph 3 of this Count were false, in that, as the defendant then and there knew that he had hit and otherwise assaulted Fernando Perales during Perales' arrest on July 29, 1979, and the defendant then and there knew that Perales was not resisting arrest.

lish language was entirely adequate for him to fully comprehend the examination and appreciate the gravity and import of Grand Jury proceedings.

## II.

■ Morales next challenges the behavior of the prosecutor in introducing evidence of an extrinsic offense. In his closing argument, the prosecutor referred to a statement by Morales to the grand jury, distinct from the statement for which he had been indicted, that had been contradicted at trial by another witness, calling such statement "a lie". The District Judge quickly interrupted the government attorney and issued a strong curative instruction to the jury, requiring them to disregard for all purposes this statement. The government contends that the reference to a related false statement by Morales before the grand jury was not error. Assuming without deciding that the reference was improper, the error would be harmless. First, the statement was followed immediately by a curative instruction by the District Judge. Second, counsel for Morales made no objection, nor did he move for a mistrial. Finally, in a discussion with the attorneys, the District Judge indicated that he did not believe that the prosecutor had acted deliberately.

## III.

■ Morales' final contention is that the prosecutor, in his closing argument, impermissibly commented on the defendant's failure to testify. The statement at issue was the following:

> But what's more important, instead of character witnesses coming in and saying that a bum from La Joya, Texas, or from Sullivan City or from Penitas is alleging, falsely perhaps, that his civil rights were violated, what's more important is the actual live witness testimony that you heard and not what the former mayor of La Joya may think about the credibility or about some individual.
>
> Of course, those are factors for you to consider. I am not saying they are not.

> But where you hear so much of this stuff, what's more important are the five individuals that were out at the scene of the arrest of Freddie Perales. That's what is important.

In his brief, Morales states that the "prosecutor pointed the jury down a path that would naturally and necessarily lead them to consider that each person at the scene testified except the defendant." The path would have been a rugged and winding one, with the insinuation hidden from view of anyone not looking for it. In fact, the only possible flagging of Morales' failure to testify was by defense counsel's objection "as commenting on the exercise of the Fifth Amendment privilege." We find the government's comment as merely suggesting that eyewitness testimony should be accorded strong weight by the jury. Even if we were somehow to construe the comment as one referring to Morales' silence, reversal would not be necessary. We simply cannot infer that the speaker's "manifest intention is to focus on that silence or the remark was such that a juror would naturally and necessarily take it as a comment on the defendant's failure to testify." *United States v. Garcia*, 655 F.2d 59, 64 (5th Cir. 1981). *See United States v. Magana-Arevalo*, 639 F.2d 226, 229 (5th Cir. 1981); *United States v. Diezel*, 608 F.2d 204, 208 (5th Cir. 1979).

AFFIRMED.