**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Jose Luis MARQUEZ, Defendant—
Appellant.**

No. 03–50596.

D.C. No. CR–03–00896–BTM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 2004.

Decided Nov. 18, 2004.

Hamilton E. Arendsen, Esq., USSD—Office of the U.S. Attorney, San Diego, CA, for Plaintiff–Appellee.

John C. Lemon, Esq., Law Offices of John C. Lemon, San Diego, CA, for Defendant–Appellant.

Before T.G. NELSON, WARDLAW, and BERZON, Circuit Judges.

## MEMORANDUM *

Jose Marquez appeals his conviction and sentence for knowing and intentional importation of marijuana into the United States in violation of 21 U.S.C. § § 952 and 960. Marquez argues that his confession was involuntary and should have been suppressed. He also argues that his confession should have been excluded based on unreasonable prearraignment delay. *See* 18 U.S.C. § 3501. We have jurisdiction under 28 U.S.C. § 1291 and we reverse.

█ In concluding that Marquez's confession was voluntary, the district court judge found that although there were some statements made about his wife, the agents (1) didn't tell him anything he didn't know already; and (2) made no promises. These findings are contradicted by the evidentiary record. The first agent to testify stated that they interviewed Marquez's wife first because they didn't "have the liberty of . . . declining prosecution," and "wanted to make sure that if they were going to decline prosecution that [they] could have her get medical attention." The agent also testified that she was aware of the technique of "arrest[ing] a passenger" if the suspect does not confess, and that they "made [Marquez] aware of the fact that his wife was ill." Moreover, the second agent to testify admitted that she "maybe" told Marquez that his wife would be more likely to be released if he "told the truth," and that he "should consider his wife." Thus, although Marquez

knew that his wife had diabetes, the interrogating agents informed him that his wife was then sick, being held, and not likely to be released unless he confessed.

While the agents did not expressly state that Marquez's sick wife would be exonerated if he confessed, that was the clear import of what they did say. Their statements implied that his wife would be favorably treated, and possibly released sooner, if he cooperated. We've previously held that a confession was involuntary when the police told a defendant that she would not see her two year old child "for a while" and "had a lot at stake." *United States v. Tingle*, 658 F.2d 1332, 1336–37 (9th Cir. 1981).

Our decision in *United States v. McShane*, 462 F.2d 5 (9th Cir.1972), does not compel a different result. Unlike the situation in *McShane*, the agents who interrogated Marquez were well aware of his wife's poor health condition and admitted that they explicitly raised this concern with Marquez. *Cf. id.* at 7 ("The police did not know she had any health problems, so there is no evidence they sought to pressure him by exploiting his fears for her health."). Because Marquez's confession was involuntary, we reverse the denial of his motion to suppress the confession.

Marquez also argues that his confession should have been excluded based on unreasonable prearraignment delay under 18 U.S.C. § 3501(c), which provides that a confession given by a person "within six hours immediately following his arrest or other detention," "shall not be inadmissible solely because of delay in bringing such person before a magistrate." Marquez crossed the border shortly after 10:50 p.m. and was taken to secondary inspection. He was placed in a holding cell at 12:10

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

a.m., after marijuana was found in his vehicle, and his interrogation began at 5:25 a.m., after he waived his *Miranda* rights. Marquez was not taken for a prearraignment hearing for over 24 hours after his interrogation ended. Marquez argues that the safe-harbor for his confession began to run when he was directed to the secondary inspection area at the border. Therefore, his subsequent waiver of his *Miranda* rights at 5:25 a.m. would have occurred 6 hours and 35 minutes after the detention.

18 U.S.C. § 3501(c) refers to an arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency. Construing the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we have held that "a brief detention at the border by immigration and customs officials of persons presenting themselves for admission to the United States is not custody, even though such persons are not free to leave or to refuse to be searched." *United States v. Butler,* 249 F.3d 1094, 1098 (9th Cir.2001). Thus, in *Butler,* we held that although Butler was detained and taken into secondary inspection while his vehicle was inspected at the border, he was not actually "in custody" for the purposes of *Miranda* until the point at which he was placed in a holding cell. *See id.* at 1101; *cf. United States v. RRA–A,* 229 F.3d 737 (9th Cir.2000) (holding that a defendant was in custody when he was actually handcuffed to the bench in the secondary inspection area).

Marquez was not in custody until 12:10 a.m., when he was placed into a holding cell. His confession thus fell within the six-hour "safe-harbor" of 18 U.S.C. 3501(c),

and any prearraignment delay would not operate to exclude his confession.

REVERSED AND REMANDED.