**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward MARX, Frank Sladek and Keith
Herring, Defendants–Appellants.**

No. 80–5127
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 27, 1981.

Daniel D. Mazar, South Miami, Fla., for defendants–appellants.

James D. McMaster, Asst. U. S. Atty., Miami, Fla., for plaintiff–appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellants Edward Marx, Frank Sladek, and Keith Herring appeal from convictions, after trial by jury, for conspiracy and possession with intent to distribute methaqualone (quaaludes) in violation of 21 U.S.C.A. §§ 841(a)(1) and 846, and 18 U.S.C.A. § 2. Appellants contend that the district court

erred in denying their motion to suppress evidence of two suitcases containing quaaludes. Herring also urges that the evidence was insufficient to support his conviction; his co-defendants do not contest the sufficiency of the evidence. We find no reversible error and accordingly affirm.

In reviewing the sufficiency of the evidence, we must view all the evidence, direct and circumstantial, in the light most favorable to the government, and must accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir. 1980). The standard of review is whether a jury could reasonably find that the evidence was inconsistent with every reasonable hypothesis of innocence or, put another way, whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980); *United States v. Witt*, 618 F.2d 283, 284 (5th Cir. 1980); *United States v. Jackson*, 588 F.2d 1046, 1056 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). In a conspiracy case, the verdict must be sustained if, taking the evidence in the light most favorable to the government, there is substantial evidence to support the conviction. *United States v. Arrendondo-Morales*, 624 F.2d 681, 684 (5th Cir. 1980); *United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979).

Herring alleges that he was merely an innocent party who had given a ride to a friend, Sladek, who coincidentally was carrying two suitcases containing over 25,000 quaaludes. Drug Enforcement Administration (DEA) informant Dudley met with David Hopewell, a co-defendant who was acquitted, and discussed arrangements for a deal with DEA undercover agent Lawler for the purchase of 25,000 quaaludes. Marx

was present at that meeting. After subsequent meetings, and after several attempts by Marx to contact his source, the deal was set for the morning of November 29, 1979, at a Howard Johnson's motel. DEA agents Lawler and Fiano observed Hopewell and Marx in one car and Herring and Sladek in another; Herring was driving his car which contained the two suitcases containing the quaaludes.

After agent Lawler asked Sladek to see the quaaludes, Marx got the car keys from Herring, and Marx and Sladek drove the car to the side of the parking lot where Lawler observed the quaaludes. Lawler then went back to where Hopewell and Herring were standing and told them that he had seen the quaaludes, that everything was okay, and that they could now go to the room; Herring responded "okay." Lawler then commented to Herring regarding the price of the quaaludes and told him that in the future he planned to buy in volume and would expect a better price, to which Herring replied, "that is what they all say." After Lawler then assured Herring that his money was good and that he would be making regular purchases in the future, Herring responded that, with any volume, Lawler could get a better price in the future. Herring denied that he had any conversation with Lawler.

Herring's version of the events was that Sladek asked him for a ride (because Sladek had lost his driver's license) to the Howard Johnson's to return some suitcases. Herring testified that he did not know whether anything was in the suitcases; he thought they were empty.

This Court recently reviewed a sufficiency of the evidence argument in a conspiracy case in *United States v. Arrendondo-Morales, supra*, 624 F.2d at 683:

In order to convict a defendant of conspiracy, the existence of a conspiracy must be established with substantial evidence showing the presence of an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators[,] *United States v. White*,

569 F.2d 263 (5th Cir. 1978), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1979), and with substantial evidence showing that each conspirator knew of, intended to join and participated in the conspiracy. *United States v. Malatesta, supra. . . .*

Because knowledge, intent, and participation are the necessary elements of the crime of conspiracy, the government must prove each of these elements beyond a reasonable doubt. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *United States v. Salinas–Salinas,* 555 F.2d 470 (5th Cir. 1977). *See United States v. Malatesta, supra,* 590 F.2d at 1381.

Participation need not be proved by direct evidence; a common purpose and plan may be inferred from a "development and a collocation of circumstances." *United States v. Malatesta, supra,* 590 F.2d at 1381, quoting *Glasser v. United States, supra,* 315 U.S. at 80, 62 S.Ct. at 469. The defendant's assent to a conspiracy may be inferred from acts which furthered the purpose of the conspiracy. *United States v. Middlebrooks, supra,* 618 F.2d at 278.

Under the conspiracy statute involved here, 21 U.S.C.A. § 846, the government was not even required to prove any overt act; proof of the conspiracy and of Herring's participation in it was all that was required. *Cacace v. United States,* 590 F.2d 1339, 1340 (5th Cir. 1979); *United States v. Palacios,* 556 F.2d 1359, 1364 n.9 (5th Cir. 1977).

Herring insisted that he never had a conversation with DEA agent Lawler, but Lawler testified that Herring made several incriminating comments about the sale of quaaludes. Herring argues that he was an unknowing "runner" who was innocently giving his friend a ride. He also contends that the alleged statements to Lawler are ambiguous and that those statements refer not to the transaction for which he was charged but rather refer to future transactions. As to the possession charge, Herring argues that there was insufficient evidence of constructive possession because there was no showing that he had the power and intention to exercise dominion and control over the quaaludes. In essence, Herring argues that the jury could not reasonably find that the evidence was inconsistent with every reasonable hypothesis of innocence.

Herring's contention concerning his conspiracy conviction is without merit. Herring's conversation with Lawler regarding the quaalude transaction taking place at the time of that conversation, as well as his comments about future drug sales, and his transportation of Sladek and the quaaludes to the motel sufficiently indicate that Herring knew of, intended to join or associate himself with, and voluntarily participated in the conspiracy. The jury could certainly choose to believe agent Lawler's testimony about the conversation with Herring rather than Herring's insistence that no conversation occurred. The jury could also conclude that the statements by Herring were not ambiguous, and that his transportation of Sladek was less than innocent. The actions of the co–defendants at the motel demonstrated group activity and voluntary cooperation, and the jury was entitled to infer that Herring was a member of the conspiracy. *United States v. Ocanas,* 628 F.2d 353, 361 (5th Cir. 1980).

Viewing the surrounding circumstances and the aggregate of the evidence, the jury could infer Herring's knowledge of the conspiracy and his willing participation therein. *See United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir. 1980) (en banc); *United States v. Arrendondo–Morales, supra,* 624 F.2d at 684; *United States v. Middlebrooks, supra,* 618 F.2d at 278; *United States v. Grassi,* 616 F.2d 1295, 1301–03 (5th Cir. 1980).

Viewing the evidence in the light most favorable to the government and making all credibility choices that tend to support the jury's verdict, we conclude that there is substantial evidence that the conspiracy existed, that Herring had knowledge of the conspiracy to sell the quaaludes, and that he knowingly participated.

Herring's reliance on *United States v. Littrell*, 574 F.2d 828 (5th Cir. 1978), is not persuasive. There this Court concluded that, because inferences of innocent behavior could be drawn from defendant Littrell's behavior, the evidence supporting his conspiracy conviction was insufficient. There, after co–defendant Davi phoned an unknown person about delivery of cocaine, Littrell drove to a shop and parked, at which time Davi said to the drug buyer that "the man is here." Littrell then spoke briefly with Davi and went into a bar; Davi took a package of cocaine from the glove compartment of the car. There was no evidence as to the nature of the conversation between Davi and Littrell, whereas in this case agent Lawler testified that Herring discussed and knew of the quaalude transaction that was then transpiring.

Herring's contention that he never had constructive possession is likewise without merit. Herring drove his own car which contained the two suitcases containing the quaaludes and he locked the suitcases in the trunk of his car; Sladek, the owner of the suitcases, had to obtain the keys from Herring in order to get the suitcases from the trunk.

■ Constructive possession is the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance. *United States v. Surface*, 624 F.2d 23, 25 (5th Cir. 1980); *United States v. Riggins*, 563 F.2d 1264, 1266 (5th Cir. 1977), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978); *United States v. Staten*, 581 F.2d 878, 883 (D.C. Cir. 1978). *Riggins* held that there was a sufficient showing of constructive possession of heroin concealed in a car where the defendant had knowledge of the heroin and had control over that car because he was the authorized driver. *United States v. Riggins, supra*, 563 F.2d at 1266.

■ The fact that the suitcases belonged to Sladek does not preclude a finding that Herring constructively possessed the quaaludes. Constructive possession need not be exclusive; it may be shared with others. *United States v. Ocanas*, 628 F.2d 353, 361 (5th Cir. 1980); *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973). The evidence in this case was sufficient to support a reasonable inference by the jury that Herring had both actual and constructive dominion and control over the quaaludes. *United States v. Ocanas, supra*, 628 F.2d at 361.

We conclude that the evidence was sufficient to support Herring's conviction on both the conspiracy and possession counts.

Herring's second contention is that the district court erred by denying the appellants' motion to suppress evidence of the two suitcases because a copy of the search warrant was not served on the defendants at the time of the search, and because the warrant was not physically present at the time and location of the search.

The suitcases were seized at the time of the arrest, on November 29, 1979, and taken to DEA headquarters. Agent Lawler applied for and received a search warrant, and another agent who was with Lawler called their supervisor at DEA headquarters and told him that they had a warrant to search the suitcases. The supervisor then searched the suitcases. The next day Lawler returned to the DEA office, inventoried the suitcases and their contents, and then made a return on the warrant to the magistrate. Lawler then spoke on the phone with appellants' former attorney, who stated that he would accept receipt of the warrant on behalf of his clients. The return and inventory indicate execution of the warrant and inventory of the suitcases on November 29, 1979, although the suitcases were not in fact inventoried until November 30, 1979.

Appellants do not contend that probable cause was lacking for the issuance of the warrant or that there was no warrant at the time the search was conducted. Rather, they argue that, because of technical violations of Fed.R.Crim.P. 41(d),[1] the motion to suppress should have been granted.

■ Appellants did not make a pre–trial motion to suppress the evidence of the suit-

1. Fed.R.Crim.P. 41(d) provides:

Execution and Return with Inventory.
The officer taking property under the warrant shall give to the person from whom or

cases as required by Fed.R.Crim.P. 12(b) and first raised this motion at trial. Under Rule 12(f) this waived the issue, and the district court would not have abused its discretion under Rule 12(f) if it had denied the motion solely on the ground of appellants' non–compliance with pre–trial procedure. *United States v. Bullock*, 590 F.2d 117, 120 (5th Cir. 1979); *United States v. Hare*, 589 F.2d 242, 243 (5th Cir. 1979); *United States v. Echols*, 577 F.2d 308, 311 (5th Cir. 1977).

However, the district court did not rely solely on appellants' pre–trial omission, but rather heard argument on the motion to suppress. We thus consider the merits of the trial court's ruling. *See United States v. Bullock, supra*, 590 F.2d at 120–21. We conclude that the district court properly denied the motion.

 Violations of Rule 41(d) are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non–compliance with the rule was intentional or in bad faith. *United States v. Diecidue*, 603 F.2d 535, 562 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971), *cert. denied*, 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490 (1972); *United States v. Dauphinee*, 538 F.2d 1, 3 (1st Cir. 1976); *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971). Failure to deliver a copy of the search warrant to the party whose premises were searched until the day after the search does not invalidate a search in the absence of a showing of prejudice. *United States v. Cafero*, 473 F.2d 489, 499 (3d Cir. 1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974); *United States v. McKenzie, supra*, 446 F.2d at 954.

In order to show prejudice in this context, a defendant must show that because of the violation of Rule 41 he was subjected to a search that might not have occurred or would not have been so abrasive had the rule been followed. *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975). Appellants have shown neither type of prejudice. Further, their contention that the actions of the DEA agents constituted a deliberate and intentional disregard of Rule 41(d) is without merit.

Appellants have the burden of proof in challenging the validity of the execution or service of the search warrant. *United States v. Vigo*, 413 F.2d 691, 693 (5th Cir. 1969). We conclude that they have failed to discharge this burden, and accordingly the district court correctly denied appellants' motion to suppress.

AFFIRMED.

from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be verified by the officer. The federal magistrate shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.