UNITED STATES of America, Plaintiff-Appellee,

v.

Armando GARCIA and Leonardo Sorzano, Defendants-Appellants.

No. 80–5714
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 4, 1981.

Jack R. Blumenfeld, Coconut Grove, Fla., for Garcia.

Thomas F. Almon, Miami, Fla., for Sorzano.

Michael P. Sullivan, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The appellants, Armando Garcia and Leonardo Sorzano, challenge the sufficiency of evidence which resulted in their convictions for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1972).[1] Sorzano also contends that the trial court incorrectly denied his motion for a mistrial based on remarks made by his codefendant's counsel. Three others, Sergio Sigler, Arturo Gonzalez and James Spodarek, were also named as defendants. Gonzalez and Spodarek entered guilty pleas prior to the trial and Sigler pled guilty to one count of the indictment after a judgment of acquittal had been entered in his favor at the close of the evidence as to the other counts.

The following scenario was outlined by the evidence presented to the jury. Special Agent Sol Weinstein of the Drug Enforcement Administration (DEA) posing as an Indianapolis, Indiana cocaine buyer, staged clandestine meetings to discuss arrangements for an anticipated purchase of cocaine in Miami, Florida. Present at one or more of the meetings were the defendants, Spodarek and Gonzalez, and confidential informant Robert Wortman. Approximately one week later Weinstein went to Miami, Florida, to consummate the deal. A Marriott hotel was designated as the location for the transaction.

Shortly before Weinstein arrived at the Marriott, another DEA agent observed Gonzalez, Spodarek and Wortman in an orange Volkswagen which drove into the hotel parking lot. When Weinstein reached the hotel, he rented adjoining rooms, one room to be used while completing the purchase and the other to accommodate surveillance agents. Some forty minutes later he met the three men beside the orange Volkswagen. Gonzalez and Spodarek accompanied Weinstein to the hotel room to examine his bankroll. They then drove the Volkswagen to appellant Leonardo Sorzano's home.

Sorzano, Gonzalez and Spodarek returned to the Marriott after several rendezvous with other men at a local baseball field. Weinstein met Sorzano for the first time at the hotel. Sorzano told Weinstein that he was "not involved." However, Weinstein was told by Gonzalez that Sorzano was the source of the cocaine. When confronted, Sorzano admitted his ability to obtain the drug and assured Weinstein that he could supply the agent with "six kilos" of cocaine a month. Sorzano and the three original occupants of the Volkswagen then returned to the baseball field. Sorzano called Weinstein shortly thereafter and expressed a willingness to deliver the drug to the baseball field, but not the Marriott. Weinstein refused, so Sorzano replied that he would call later. Although Sorzano's car was observed driving in the vicinity, he never again met with Weinstein. He was arrested as he drove past the Marriott shortly after the other defendants were taken into custody at the hotel.

The transaction shifted into a second phase some forty-five minutes later. Weinstein, Spodarek and Wortman agreed to rent a third hotel room. Then drug agents conducting surveillance saw three new suspects drive into the parking lot, exit from their automobile and approach the orange Volkswagen. One of the men, who was later identified as Armando Garcia, was carrying a package described as either "brown, blue, or black within the white" stripes as the men entered the hotel.

---

1. They were each sentenced to 42 months concurrently on the possession and conspiracy counts and a 36-month special parole term on the possession count.

Weinstein first encountered the new participants in the third hotel room. He and Spodarek were admitted to the room by Gonzalez, who indicated that the cocaine had been delivered. As he stepped through the door, Weinstein saw a clear package of white powder, later analyzed as cocaine, in the vicinity of the bed. Referring to Garcia and his friend Sergio Sigler, Weinstein asked the identity of the "new players." Gonzalez stated that they were the owners of the cocaine. Garcia and Sigler, who were only about ten feet away, nodded their heads affirmatively as Gonzalez spoke. The exchange of information took place in English, which all participants spoke and understood. Weinstein announced that he was going to get the money. He left, returned, and left again with Gonzalez and Spodarek, who were then arrested. Garcia and Sigler remained in the hotel room with the cocaine this entire time and later were arrested there. A blue and white plastic bag was discovered next to the bag containing the cocaine. Neither appellant disputes the existence of a conspiracy between Gonzalez and Spodarek.

■ The jury was charged with respect to conspiracy and drug possession. Conspiracy is an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the participants. *United States v. Marx*, 635 F.2d 436, 438 (5th Cir.1981); *United States v. Arredondo-Morales*, 624 F.2d 681, 683 (5th Cir.1980). Title 21 U.S.C. § 846, though, does not require proof of an overt act. Proof of the conspiracy and of the defendant's participation in it is sufficient. *United States v. Marx*, 635 F.2d at 439; *Cacace v. United States*, 590 F.2d 1339, 1340 (5th Cir.1979). Participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances. *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). Conviction on the substantive crime is not prereq-

uisite to culpability on a conspiracy charge. However, if the contemplated crime has been committed by any coconspirator, the other coconspirators, as partners of each other, may be charged as principals in the perpetration of the crime. *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); *United States v. Sullivan*, 578 F.2d 121, 123 (5th Cir.1978).

■ Possession of cocaine was the substantive crime underlying the conspiracy count. Both actual and constructive possession of the drug are proscribed by 21 U.S.C. § 841. A person has constructive possession of a thing when he has dominion and control over its use. *United States v. Surface*, 624 F.2d 23, 25 (5th Cir.1980). Constructive possession can be joint, as when more than one person occupy a room containing the item. *United States v. Marx*, 635 F.2d at 440, *United States v. Ocanas*, 628 F.2d 353, 361 (5th Cir.1980).

It is especially important in this case to remember that the evidence, direct and circumstantial, must be viewed in the light most favorable to the government and the inferences must be drawn to support the jury verdict. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). After having reviewed the evidence in light of the legal principles just enumerated, we hold that a reasonable jury would have found the evidence inconsistent with every logical hypothesis of innocence. *United States v. Richards*, 638 F.2d 765, 768 (5th Cir.1981); *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980) (U.S. app. pending). We cannot say that the jury must necessarily have had a reasonable doubt as to the appellants' innocence. Consequently, the jury's verdict is conclusive. *United States v. Shaw*, 555 F.2d 1295, 1300 (5th Cir.1977).

■ Garcia obviously knew the admitted coconspirators, Gonzalez and Spodarek.[2]

**2.** The government need not show that Garcia knew Sorzano and all other conspirators. Cul-

pability may be established upon proof that the defendant knows of the conspiracy and associ-

He was present with them in the hotel room. In the Marriott parking lot, he apparently recognized the orange Volkswagen in which they rode and started toward it. Although there is no direct evidence that Garcia's blue and white bag contained cocaine, an inference that it did can be drawn from the fact that a similarly colored plastic bag was found with the cocaine and Garcia in the hotel room. Taking the view most favorable to the government, a reasonable juror would conclude that Garcia knowingly carried cocaine to the Marriott for sale to Weinstein.[3] This inference is corroborated by Garcia's affirmative nod when, not fifteen feet away, Gonzalez identified him as the owner of the drug in a language he could understand. Finally, Garcia remained in the room with total dominion and control over the cocaine after Gonzalez left just prior to his arrest. Had Garcia not been in on the deal, it is doubtful that he would have been permitted to stay with the drugs. His knowing and intentional participation as a coconspirator was established beyond a reasonable doubt.

■ Garcia's conviction for possession is also justified by the evidence.[4] An inference can be drawn that Garcia initially possessed the drug in the blue and white bag he brought to the Marriott. He was in constructive possession of the cocaine in the hotel room after Gonzalez left, because he had control over it.[5] Moreover, since the

participants in the conspiracy like Gonzalez and Spodarek apparently possessed the drug, Garcia, as a coconspirator, will be considered to have had it also.

Sorzano also frequently accompanied Gonzalez. He rode to the Marriott with Gonzalez and met Weinstein there. This encounter laid the groundwork for a six-kilo drug sale to take place in the future. He called Weinstein to suggest that a cocaine deal be immediately consummated at a local baseball field similar to if not the one where he and Gonzalez had gathered with other cohorts. True, Sorzano did not supply the drugs for this purchase, but clearly he knew of and intentionally joined the ongoing plans to sell drugs to Weinstein then and at a later date. *United States v. Bright*, 550 F.2d 240, 242 (5th Cir.1977). We conclude that no reasonable jury would necessarily have questioned his complicity in the conspiracy.

The only proof that Sorzano personally possessed cocaine was a statement by a special agent that he had seen the substance at Sorzano's house. But, as in the case of Garcia, Sorzano assumed responsibility for the possession by his coparticipants by joining the conspiracy. There was sufficient evidence before the jury to sustain Sorzano's conviction on both the conspiracy and the possession counts.

Lastly, Sorzano contends that the closing argument of Garcia's counsel accented his

ates himself with it. *United States v. Ochoa*, 609 F.2d 198, 202 (5th Cir.1980).

3. The facts is this case are distinguishable from those in *United States v. Littrell*, 574 F.2d 828 (5th Cir.1978), cited by Garcia for the proposition that he was simply a disinterested "runner" of the drug. In *Littrell*, the defendant drove a car to a designated business establishment and left it with one of the conspirators. Cocaine was later removed from the car by the conspirator. As a reasonable hypothesis of innocence precluding conviction, the court postulated that Littrell may have unknowingly transported the drug. Here, Garcia physically carried the drug to the other conspirators, acknowledged that it was cocaine and that he owned it. Unlike those in *Littrell*, these facts are not susceptible to a reasonable hypothesis of innocence.

4. The government urges the court to apply the concurrent sentences doctrine which provides that the existence of one valid conviction renders unnecessary a review of the other convictions where concurrent sentences have been imposed. *United States v. Alvarez*, 548 F.2d 542, 543–44 (5th Cir.1977). We are not free to rely on this principle because it is not applicable where the defendant will suffer adverse collateral consequences from the unreviewed conviction. *United States v. Rubin*, 591 F.2d 278, 280 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979). In this case, a special parole term was also meted out for the possession conviction. Thus, we must examine that charge independently as well.

5. *See United States v. Marx*, 635 F.2d 436, 440 (5th Cir.1981); *United States v. Ocanas*, 628 F.2d 353, 361 (5th Cir.1980).

failure to testify in a matter depriving him of due process and his privilege against self-incrimination. His motion for a mistrial and severance on the basis of these alleged innuendos was denied by the district court.

■■■ Comment on a defendant's silence is reason for reversal only if the speaker's[6] manifest intention is to focus on that silence or the remark was such that a juror would naturally and necessarily take it as a comment on the defendant's failure to testify. *United States v. Magana-Arevalo*, 639 F.2d 226, 229 (5th Cir.1981); *United States v. Diezel*, 608 F.2d 204, 208 (5th Cir.1979). Both direct and indirect comments which undermine the defendant's fifth amendment rights will invalidate a conviction. *United States v. Bright*, 630 F.2d 804, 825 (5th Cir.1980); *United States v. Forrest*, 620 F.2d 446, 455 (5th Cir.1980). In reviewing allegedly impermissible comments, though, a court must be sensitive to the context in which the statements were made. *United States v. Bright*, 630 F.2d at 826. Here, the jury would naturally have taken the attorney's statements in the manner in which they were intended, namely to illustrate the presumption of innocence and the maxim that "things are not always as they seem."[7] We decline to reverse Sorzano's conviction on this ground.

For the forgoing reasons, the judgment of the district court is

AFFIRMED.

6. Comments by persons other than a prosecutor can violate the defendant's fifth amendment rights. *United States v. Aguiar*, 610 F.2d 1296, 1302 (5th Cir.1980), *cert. denied*, 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1981).

7. Counsel for Garcia stated:
We don't make them prove. Every person is presumed innocent and as Judge Eaton will tell you, the defendant does not have to tell the government why he does what he does, or where he goes in any circumstances, because you and me and Armando Garcia have a right to go where we want without having the government to grab, drag us to twelve, twelve people in court and say, 'Tell twelve people about it.'
(Transcript at 282).
In his closing remarks, Garcia's attorney recounted a story in which an eyewitness to an

event drew the wrong conclusion from what she had seen, because she was unaware of a fact that threw a completely different light on the happening. The lawyer said:
[S]he just assumed what was apparent, but she didn't know what happened before. She didn't know what happened, again, and so she drew a conclusion from what was apparent without all the facts because nobody presented her with all the facts . . . .
(Transcript at 308–09). There is no reason to believe that this dialogue was intended to imply that the defendant should have come forward with that one fact which would have explained his innocence. Rather, a juror would likely interpret the counsel's comments as a request that the jury look behind the apparent before reaching a verdict.