United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 27, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-30737
Summary Calendar
_____

UNITED STATES OF AMERICA

       Plaintiff - Appellee

  v.

CEDRIC L JACOBS

       Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana, Monroe
No. 3:03-CR-30023-1-RGJ

_____

Before KING, Chief Judge, and JOLLY and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    Defendant-Appellant Cedric L. Jacobs brought a motion to
suppress evidence obtained from three separate searches.  The
district court denied the motion, holding that each of the
searches was constitutionally valid.  Jacobs later entered a
conditional guilty plea to the charges against him.  He now
appeals the district court's determination regarding the
admissibility of the evidence against him.  We AFFIRM.

_____

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

- 1 -

# I. BACKGROUND

On May 27, 2003, Rick Swigart, a detective in the San Bernardino County, California Sheriff's Department was conducting routine drug interdiction at a Federal Express shipping center in Rialto, California. Swigart noticed a package that looked suspicious. The following characteristics drew Swigart's attention: (1) the package was heavily taped with clear packaging tape; (2) the package was shipped priority overnight from Sandra Peterson in Cutten, California to Miss Peterson in Monroe, Louisiana; (3) the sender paid cash to ship the parcel; (4) no telephone numbers were listed for either the sender or the recipient; (5) the package had a strong odor of dryer sheets and of a chemical solvent consistent with the scent of the narcotic phencyclidine (PCP). Based on these characteristics, Swigart brought his drug-sniffing dog, Taz, into the facility. He placed the suspicious package among several other packages to see if the suspicious package would draw Taz's attention. When Taz detects narcotics, he is trained to give a "hard alert," which involves sitting down in front of the package containing narcotics. When Taz came upon the suspicious package, he gave a "passive alert." Taz walked by the box, paused, looked at the package, looked at Swigart, and looked at the package again.

Based on Taz's reaction, Swigart seized the package and sought a search warrant from a California state court so that he

could open the box.  In his affidavit in support of the request, Swigart explained why the characteristics he initially noticed were indicative of a narcotics shipment.  He also stated that "Taz gave a positive 'alert' on this parcel indicating the parcel had been saturated with the scent of illegal narcotics."  Based on the affidavit, the court issued a search warrant.  Pursuant to the search warrant, Swigart opened the package and found that it contained PCP.  California law enforcement officials then repackaged the box with packing materials and a small portion of the PCP, retaining most of it as evidence.  They also contacted the police department in Monroe, Louisiana and requested that they conduct a controlled delivery of the package.  The Monroe Police Department agreed, and the package was sent to Louisiana.

On May 30, 2003, the Monroe Police Department delivered the package.  They placed the residence to which the package was addressed under surveillance and had an undercover officer dressed as a Federal Express employee deliver the package. Before delivering the package, Detective Mark Johnson of the Monroe Police Department prepared an affidavit in support of a search warrant of the address listed on the package.  As the delivery was taking place, Johnson was waiting with a Louisiana state court judge.  As soon as the delivery occurred, an agent conducting surveillance contacted Johnson.  At that point, the judge signed the search warrant.  Johnson immediately called the

officers at the scene and informed them that a warrant had been signed and that they could begin searching the residence. The officers proceeded to execute the warrant. Immediately after Johnson informed the officers that the warrant had been signed, he drove to the residence to deliver the actual warrant. It took Johnson approximately ten minutes to arrive on the scene with the search warrant. As a result of the search, police found large quantities of several drugs as well as several firearms. Based on this evidence, the police arrested Defendant-Appellant Cedric L. Jacobs and Rayetta Goodin on state drug charges. Jacobs and Goodin were later released on bond.

On July 23, 2003, Jacobs and Goodin were indicted by a federal grand jury for various federal narcotics offenses. The next day, a federal magistrate judge issued arrest warrants for Jacobs and Goodin. The arrest warrants were served by Drug Enforcement Administration (DEA) agents on September 3, 2003, at the same residence that was searched on May 30, 2003. As the agents were arresting Jacobs and Goodin, they noticed some marijuana sitting in plain view near the front door. After the officers conducted a protective sweep of the residence, DEA Special Agent Vic Zordan then asked Jacobs for consent to conduct a full search of the residence. Jacobs told Zordan that the house belonged to Goodin and that Zordan would have to ask her. When Zordan asked Goodin for consent to search the house she

asked him if he had a search warrant. Zordan told her that he did not but that based on the evidence found in plain view, he could quickly obtain a warrant to search the rest of the residence. Goodin consented to a search, saying "Yeah, I guess if you want to." Upon searching the rest of the residence, the agents found additional evidence of narcotics trafficking and distribution.

At trial, Jacobs moved to suppress all of the evidence derived from the search of: (1) the package on May 28, 2003; (2) the residence on May 30, 2003; and (3) the residence on September 3, 2003. On December 15, 2003, a federal magistrate judge issued a report and recommendation denying Jacobs's motion. On February 20, 2004, the district court adopted the magistrate's report. On March 15, 2004, Jacobs entered a conditional guilty plea to the charges of: (1) conspiracy to distribute and to possess with intent to distribute marijuana and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) possession of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1) and (2). Jacobs reserved the right to appeal the denial of his motion to suppress the evidence seized in the three searches. All remaining charges in the indictment were dismissed.

Jacobs now appeals the district court's denial of his suppression motion. First, Jacobs argues that the warrant to

search the package seized at the Federal Express facility was defective because Swigart misled the court regarding Taz's response to the package.  Second, he argues that the first search of the residence was invalid because the search commenced before the warrant arrived.  Finally, Jacobs alleges that the second search was invalid because Goodin did not freely consent to the search.

## II.  STANDARD OF REVIEW

In reviewing the denial of a motion to suppress, we employ a two-tiered standard of review, examining the district court's factual findings for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action de novo. United States v. Keith, 375 F.3d 346, 348 (5th Cir. 2004).  In reviewing the district court, "we must view the evidence presented at the hearing on the motion to suppress in the light most favorable to the prevailing party -- in this case, the government."  United States v. Nichols, 142 F.3d 857, 866 (5th Cir. 1998); see also United States v. Gutierrez-Orozco, 191 F.3d 578, 581 (5th Cir. 1999) ("We view all of the evidence introduced at the suppression hearing in the light most favorable to the prevailing party, in this case the government.")

## III.  ANALYSIS

## A.    The May 28, 2003 Search

Under the good-faith exception to the exclusionary rule, evidence obtained through the execution of a search warrant that was not supported by probable cause will nevertheless not be suppressed so long as the agent executing the warrant relied in good faith on the warrant and acted within the scope of that warrant.  United States v. Loe, 248 F.3d 449, 460 (5th Cir. 2001).  There are, however, four exceptions to the good-faith exception.  United States v. Webster, 960 F.2d 1301, 1307 (5th Cir. 1992) (per curiam).  In the exception relevant to this case, the evidence must be suppressed if the judge issuing the warrant "was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth."  See id. at 1307 n.4.

"The party attacking the warrant bears the burden of establishing by a preponderance of the evidence that the misrepresentation was made intentionally or with reckless disregard for the truth."  United States v. Alvarez, 127 F.3d 372, 373 (5th Cir. 1997).  If the challenger meets this burden, we must remove the offensive language from the affidavit and/or add any deleted information to determine if the affidavit, properly constituted, would have established probable cause to issue the warrant.  Id. at 374.

The district court found that the search of the package did

- 7 -

not violate the Fourth Amendment. The court first found that Swigart's testimony established Taz's reliability as a drug-sniffing dog. Second, the district court found that Swigart's affidavit was not misleading, since Taz's reaction to the package was sufficient to make Swigart certain that the package contained narcotics. Further, the court found no evidence that Swigart was acting in bad faith. Finally, the district court found that even if the affidavit had explicitly noted that Taz did not give his trained response, Taz's passive response coupled with the other characteristics of the package created probable cause.

On appeal, Jacobs argues that the district court erred in finding that Swigart did not act in bad faith or intentionally mislead the court. Jacobs further argues that without evidence of Taz's response to the package, the remaining statements in Swigart's affidavit were insufficient to create a reasonable suspicion that there were narcotics inside the package. Jacobs notes that because each of the factors taken alone had a plausible explanation, there was no probable cause.

Jacobs's arguments do not establish that the district court was clearly erroneous in determining that Swigart acted in bad faith or that the remainder of the affidavit failed to establish probable cause. Jacobs has the burden of establishing by a preponderance of the evidence that Swigart acted in bad faith. Alvarez, 127 F.3d at 373. He has simply pointed to no evidence

to meet that burden.  Instead, Jacobs draws our attention to a case from the Eighth Circuit.  <u>United States v. Jacobs</u>, 986 F.2d 1231 (8th Cir. 1993).  In <u>Jacobs</u>, based on a tip, the police intercepted a Federal Express package they believed contained narcotics.  The package was presented to a drug-sniffing dog.  Although the dog expressed interest in the package, it did not alert as it was trained to.  The affidavit in support of the search warrant noted that the dog expressed interest but did not note that the dog did not alert in the manner it was trained to.  Based on this response, the dog handler could not state with any certainty whether or not the package contained narcotics.  The police then brought in a second dog, which expressed no interest in the package whatsoever.  The result of this second test was also withheld from the judge, who proceeded to issue a search warrant.  Based on these events, the Eighth Circuit suppressed the evidence obtained from the search.  Jacobs argues that <u>Jacobs</u> mirrors the facts before us and thus mandates that we suppress the evidence against him

    For several reasons, <u>Jacobs</u> does not undermine our conclusion that the evidence should not be suppressed. Preliminarily, we note that as a case from a sister circuit, <u>Jacobs</u> is not binding on this court.  But more importantly, <u>Jacobs</u> is distinguishable from our case.  In the instant case, Swigart testified that based on his experience working with Taz,

he had no doubt that Taz's passive alert indicated that the package contained narcotics. On the other hand, in <u>Jacobs</u>, the officers' decision to bring in a second dog and their failure to notify the court of the results of the second test indicates both that they had doubts about the first dog's alert and that they made a conscious decision to withhold those doubts from the court. These actions give a clear indication of bad faith. Swigart's actions in the instant case exhibit no such bad faith.

Even if we assume, <u>arquendo</u>, that Swigart's affidavit was made in bad faith or with reckless disregard for the truth, the remaining information, coupled with a more complete description of Taz's alert, provided probable cause for the warrant. "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." <u>United States v. Daniel</u>, 982 F.2d 146, 151 (5th Cir. 1993) (per curiam). It is true, as Jacobs notes, that any one of the characteristics of the package taken on its own would not create a high enough probability of criminal activity to justify a search. For example, the mere fact that no phone numbers were listed on the shipping materials could reflect forgetfulness just as much as it could reflect drug trafficking. However, looking at each characteristic of the package in isolation is irrelevant because probable cause is evaluated under a totality of the circumstances test. <u>United States v. Dickey</u>, 102 F.3d 157, 162

(5th Cir. 1996).  The package drew Swigart's attention based on the combination of several factors.  Based on his police experience, even before Taz identified the package, he was reasonably certain that the package contained narcotics.  This, coupled with Taz's clear expression of interest in the package, made it highly probable that there was criminal activity afoot and that probable cause existed.

**B.   The May 30, 2003 Search**

We have previously held that a violation of the rule governing the execution and service of a search warrant is "essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non-compliance with the rule was intentional or in bad faith."  United States v. Marx, 635 F.2d 436, 441 (5th Cir. Unit B Jan. 1981).  To show prejudice "a defendant must show that because of the violation . . . he was subjected to a search that might not have occurred or would not have been so abrasive had the rule been followed."  Id.  Further, the Supreme Court has stated that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search."  Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004).

The district court determined "that the short delay in the warrant's delivery to the defendants was well within reason."  On

appeal, Jacobs argues that the ten minute delay was not reasonable since there were no exigent circumstances that required an immediate search. Jacobs also argues that because the warrant was not present for the first ten minutes of the search, the officers on the scene had no guidance as to the scope of the search permitted under the warrant.

Jacobs's arguments are of no moment. First, there were exigent circumstances present. The package that was delivered to the residence contained only a small fraction of the original amount of PCP. As soon as they opened the package, the recipients would be alerted to the fact that the package had been tampered with. The recipients would thus be on notice that the police would quite likely be arriving soon. This notice would have dramatically increased the likelihood that the officers would be met with violence when they did arrive. As for Jacobs's argument that the delay allowed the officers to freely search the residence for ten minutes, Jacobs must affirmatively demonstrate that the officers on the scene conducted the search in a way they would not have had the warrant been present. Marx, 635 F.2d at 441. Jacobs has offered no such demonstration. Since the warrant was prepared ahead of time for the judge's signature, it is possible that the officers on the scene were told what the scope of the warrant would be. If this were the case, Jacobs's argument would be factually incorrect. As he is the party

challenging the search, he bears the burden of refuting such possibilities.  He has made no effort to do so.  Accordingly, the district court had no reason to suppress the evidence obtained from the May 30 search.

**C.    The September 3, 2003 Search**

Voluntary consent to a search is an exception to the general prohibition on warrantless searches.  <u>United States v. Jenkins</u>, 46 F.3d 447, 454 (5th Cir. 1995).  We consider six factors in determining the voluntariness of consent.  These factors are:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

<u>United States v. Tompkins</u>, 130 F.3d 117, 121 (5th Cir. 1997).  No single factor is dispositive, and the voluntariness of consent must be determined from the totality of the circumstances.  <u>Id.</u> We review the factual determination of whether there was consent under the clearly erroneous standard.  <u>Id.</u> at 120

The district court found that Goodin's consent was voluntary.  In reaching this conclusion, the court cited several factors, chief among them being Goodin's inquiry as to whether Zordan had a search warrant.  The district court found that this inquiry demonstrated that Goodin was aware that she had the right to refuse consent to the search.  Jacobs argues that the district

- 13 -

court's ruling was clearly erroneous since the circumstances reflect that Goodin was coerced into granting consent. Jacobs argues that the fact that Goodin was already in custody, coupled with the fact that the officers had already conducted a protective sweep of the residence, created an atmosphere that was not conducive to voluntary consent.

We find Jacobs's argument unconvincing. We cannot conclude that the district court's finding was clearly erroneous based on a vague argument about the general atmosphere. In truth, the atmosphere in which the consent was given was really no different than any other arrest scene. Looking at the concrete evidence, there is nothing to suggest that the officers used any coercive tactics, force, intimidation, promises, or other forms of coercion to obtain Goodin's consent. Accordingly, we find that the district court did not err in denying Jacobs's motion to suppress the evidence seized from the September 3, 2003 search.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.