# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2011

No. 10-50742

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE DOLORES AHEDO, also known as Alberto Jose Martinez, also known as
Jose A. Martinez, also known as Joe Martinez, also known as Bam Bam
Martinez, also known as Jose Martinez, also known as Bam Bam; JACINTO
NAVAJAR, also known as Cache; MIKE GARCIA,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
No. 5:08-cr-00047

Before JONES, Chief Judge, and DAVIS and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellants Jose Ahedo, Jacinto Navajar, and Mike Garcia
(collectively "Appellants") were indicted with one count of conspiracy to commit
racketeering in violation of the Racketeer Influenced and Corrupt Organizations

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-50742

Act (RICO), 18 U.S.C. § 1962. Following trial, a jury convicted Appellants. Each Appellant alleges various trial errors on appeal. For the foregoing reasons, we affirm the convictions.

## I.

Appellants are alleged members of the Texas Mexican Mafia (TMM), a highly-structured criminal organization that derives its profits primarily from drug trafficking and extortion. The TMM "taxes" independent drug dealers based on the dealer's volume of sales and uses intimidation to obtain payment. If a dealer refuses to pay, the TMM may resort to killing the dealer. The TMM also distributes illegal narcotics. Ahedo, Navajar, and Garcia were indicted and found guilty of racketeering acts including murder, solicitation of murder, attempted murder, extortion, and conspiracy to distribute narcotics.

## II.

Following conviction by a jury, Appellants appeal four alleged trial errors: 1) dismissal of a juror after trial had begun; 2) improper admission of extrinsic evidence; 3) admission of evidence obtained during allegedly illegal vehicle searches; and 4) bolstering of witness credibility by a government witness. We address each in turn.

## A.

Navajar asserts that the district court erred in dismissing a juror six days after trial began. During trial, a juror expressed "concern or fear" about continuing to serve on the jury because he works near locations where the TMM allegedly operates. Receiving no objections from the parties, the district court dismissed the juror and replaced him with an alternate.

Because Navajar did not raise this objection before the district court, we review only for plain error. *See United States v. Bilecki*, 876 F.2d 1128, 1130 (5th Cir. 1989). To establish plain error, Navajar must show an error that was clear and obvious, which affected his substantial rights. *See United States v. Olano*,

No. 10-50742

507 U.S. 725, 732 (1993). If these conditions are met, we may exercise our discretion to correct the error "but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005) (quotations and citations omitted).

We find no error in the district court's exercise of its discretion to remove a juror. A district court may exercise its discretion to remove a juror "whenever the judge becomes convinced that the juror's abilities to perform his duties become impaired." *United States v. Virgen-Moreno*, 265 F.3d 276, 288 (5th Cir. 2001) (quoting *United States v. Leahy*, 82 F.3d 624, 628 (5th Cir. 1996)) (marks omitted).  The decision to remove a juror will be disturbed only if it prejudiced the defendant, and the court will find prejudice only "if the juror was discharged without factual support or for a legally irrelevant reason." *Id.* (quoting *Leahy*, 82 F.3d at 628). The district court engaged in an exchange with the juror to determine whether he was able to perform his duties and concluded that he was not. Navajar's conclusory assertion that "the disruption of [jury] selection . . . has a substantial effect on the outcome of the case" is insufficient to establish plain error.

**B.**

Garcia asserts on appeal that the district court erred in admitting evidence of the murder of Eduardo "Floppy" Guajardo in violation of Federal Rules of Evidence Rules 404(b) and 403. Garcia argues that the evidence should have been excluded by the district court under Federal Rule of Evidence 404(b) because it was extrinsic evidence that was unfairly prejudicial to him. The murder of Guajardo was not listed in the indictment and Garcia argues that the murder was unconnected to the TMM. The district court denied Garcia's pre-trial motion in limine seeking to suppress the evidence, finding that in a RICO prosecution, the government may present evidence of unindicted conduct to

3

establish the existence of a RICO enterprise and to prove Garcia's participation in the enterprise.

Although Garcia did not object to the admission of the evidence at trial, his pre-trial motion to suppress the evidence was sufficient to preserve the error for appellate review. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). "We review a district court's evidentiary rulings for abuse of discretion," subject to a harmless error analysis. *United States v. Cantu*, 167 F.3d 198, 203 (5th Cir. 1999). "[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced [the defendant's] rights." *United States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003).

The government is not limited to offering only evidence of overt or racketeering acts as alleged in the indictment. *See United States v. Krout*, 66 F.3d 1420, 1425 (5th Cir. 1995). "[E]vidence of an uncharged offense arising out of the same transactions as the offense charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b)." *Id.* (quoting *United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991)). The government may offer evidence of unindicted acts to prove that members of a criminal enterprise engaged in the acts to further the objectives of the conspiracy. *Id.*

The evidence of Garcia's participation in Guajardo's murder was not extrinsic to the charged conduct because Guajardo, a drug dealer, was murdered for the failure to pay a debt, conduct specifically described as the TMM's methodology as charged in the indictment. The government presented evidence at trial that Guajardo's murder connected Garcia's participation in the indicted racketeering behavior. *See United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998). The evidence was not "[e]vidence of other crimes, wrongs, or other acts," *see* FED R. EVID. 404(b), but evidence of Garcia's participation in the charged conspiracy. As such, the district court did not err in admitting this evidence.

No. 10-50742

Moreover, even assuming the evidence was extrinsic and subject to the Rule 403 analysis, we need not decide whether the district court abused its discretion in admitting the evidence because its admission did not substantially prejudice Garcia's rights. Evidence of twenty-six murders and attempted murders by members of the TMM was introduced at trial; the admission of evidence of one additional murder at trial was harmless.

## C.

Ahedo and Navajar argue that the district court erred in admitting evidence seized during their separate arrests. Ahedo, whose vehicle was searched in 2003, and Navajar, whose vehicle was searched in 2008, assert that the searches were impermissible pursuant to *Arizona v. Gant*, 129 S. Ct. 1710 (2009). In *Gant*, the Court held that police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 129 S. Ct. at 1719. A search is also permissible if "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* (quotations omitted).

Ahedo and Navajar argued for suppression of the seized evidence for the first time during trial. Generally, failure to raise the issue in a pre-trial motion to suppress forfeits the issue on appeal. *See United States v. Marx*, 635 F.2d 436, 441 (5th Cir. Unit B Jan. 1981); *see also* FED. R. CRIM. P. 12(b)(3)(C). However, because the district court heard argument on the suppression of the evidence during trial, we will consider the merits of the district court's ruling. *Id.* When reviewing a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, reviewing factual findings for clear error and legal conclusions de novo. *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011).

5

No. 10-50742

Ahedo was stopped in his vehicle on August 8, 2003, for failing to use a turn signal. He was arrested pursuant to an outstanding warrant. After Ahedo was arrested, his car was searched and authorities found a drug ledger and cash. Navajar was stopped in his vehicle on January 15, 2008, pursuant to a traffic stop. He was arrested on an outstanding warrant for a parole violation. At some point during the stop, Navajar's car was searched. Several envelopes containing cash were found, which were marked to a corresponding location of a drug tax collection by the TMM. The record is unclear as to whether Navajar was secured at the time of the search.

Even assuming that the searches of Ahedo's and Navajar's vehicles were impermissible pursuant to *Gant*, this court has held that the good faith exception applies. "The good-faith exception to the exclusionary rule provides that evidence obtained from an unconstitutional search need not be suppressed when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *United States v. Curtis*, 635 F.3d 704, 713 (5th Cir. 2011) (finding that the good faith exception did not require suppression of evidence seized following *Gant*) (quotations omitted); *see also United States v. Jackson*, 825 F.2d 853, 866 (5th Cir. 1987) (en banc) (holding that the good faith exception applies to a search that was legal at the time it was conducted but was rendered illegal by intervening change in the law). "Where [p]anels of this court have upheld searches of a particular type and that type of search is later held unconstitutional, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way." *Curtis*, 635 F.3d at 714 (quotations omitted) (alteration in original).

The vehicle searches at issue occurred between one and six years, respectively, before *Gant* was decided. At the time of the searches, the governing case law was "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain

6

access to the vehicle at the time of the search." *Gant*, 129 S. Ct. at 1718 (citing *New York v. Belton*, 453 U.S. 454 (1981)). Thus, the officers' belief that the searches were authorized was objectively reasonable and the district court did not err in admitting the challenged evidence.

Finally, regardless of any error, Ahedo and Navajar have failed to establish that admission of the seized evidence was not harmless. *See United States v. Garcia-Ruiz*, 546 F.3d 716, 718 (5th Cir. 2008). "In the context of suppression of evidence, the test for harmless error is whether the trier of fact would have found the defendant guilty beyond a reasonable doubt if the evidence had been suppressed." *United States v. Willingham*, 310 F.3d 367, 372 (5th Cir. 2002) (quotations omitted). Evidence presented at trial established that Ahedo and Navajar were high-ranking members of the TMM, and that they participated directly in the indicted activities of the TMM, including drug trafficking and murder. In light of the overwhelming evidence of Ahedo's and Navajar's guilt, any error in admitting the seized evidence was harmless.

### D.

Appellants argue that the government used FBI Special Agent Michael Carlisle to bolster the credibility of its informant witnesses expected to testify at trial. "When bolstering testimony suggests to the jury that it may shift to a witness the responsibility for determining the truth of the evidence, its admission may constitute reversible error." *United States v. Price*, 722 F.2d 88, 90 (5th Cir. 1983).

Because Garcia objected at trial to the alleged error, we review his challenge for abuse of discretion. *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009). Navajar and Ahedo did not make a contemporaneous objection and now assert that Garcia's objection was sufficient to avoid plain error review. *See United States v. Sanchez-Sotelo*, 8 F.3d 202, 210 (5th Cir. 1993) (reviewing for abuse of discretion when the appellant's co-defendant objected at trial); *United*

No. 10-50742

*States v. Love*, 472 F.2d 490, 497 (5th Cir. 1973) (holding that the failure of one co-defendant's counsel to object was "excused because such a motion or objection would have been a useless formality" when the other co-defendant's counsel had objected); *but see United States v. Estrada-Fernandez*, 150 F.3d 491, 495 (5th Cir. 1998) (applying plain error review when defendant failed to join a co-defendant's objections); *United States v. Harris*, 104 F.3d 1465, 1471 (5th Cir. 1997) (finding that the objections of one defendant to jury instructions did not preserve the appellate rights of other defendants).

We need not decide whether Garcia's objection was sufficient to preserve error on behalf of his co-defendants because there was no reversible error under either standard. Special Agent Carlisle, the first witness called by the government, testified about the methodology of his investigation of the TMM, including the agency's use of informants. In response to questioning about the credibility of the informants, Carlisle described the screening process for informants, including the importance of an informant's credibility, and stated that an informant is no longer used once deemed not credible. In context, the exchange about informant credibility was part of a discussion of the method of investigation, not the credibility of a specific informant witness. Special Agent Carlisle did not vouch for the truthfulness of any particular witness, and as such admitting his testimony was not reversible error. *See, e.g., United States v. Burns*, 526 F.3d 852 (5th Cir. 2008) (finding that when the government witness referred to the truthfulness of a specific witness by name there may have been improper bolstering of the witness).

## III.

For the foregoing reasons, we find no reversible error. Appellants' convictions are AFFIRMED.